UNITED STATES of America, Appellee,

v.

William MEGGETT, Robert Bradley, Emily Bradley, Defendants,

Appeal of Robert BRADLEY, Defendant.

No. 561, Docket 88–1317.

United States Court of Appeals, Second Circuit.

Argued Dec. 22, 1988.

Decided May 8, 1989.

Henriette D. Hoffman, The Legal Aid Society, New York City, for defendant.

James McGuire, Asst. U.S. Atty., S.D.N.Y. (Rudolph Giuliani, U.S. Atty., Vincent L. Briccetti, Asst. U.S. Atty., of counsel), for appellee.

Before NEWMAN and ALTIMARI, Circuit Judges, and GRIESA, District Judge.*

GRIESA, District Judge:

Appellant Robert Bradley appeals from a criminal conviction in the District Court for the Southern District of New York. After a jury trial before Judge Leisure, Bradley was convicted on one count of conspiracy to distribute and possess with intent to distribute heroin, four substantive counts of heroin distribution, one substantive count of possessing heroin with intent to distribute, and one count of using and carrying firearms during and in relation to a drug trafficking crime.

The only contention raised on appeal relates to Bradley's conviction on the firearms count. Since we find no error in connection with this issue the judgment of conviction is affirmed.

### Facts

This case involved the distribution of heroin to an undercover detective on four separate occasions between August 19 and December 15, 1987. On each occasion the source of the heroin was Bradley. The heroin originated from or passed through Bradley's apartment 3G, 990 Anderson Avenue, in the Bronx.

The first distribution occurred on August 19, 1987. William Meggett, a co-conspirator, called Bradley, who told Meggett that heroin was available. Meggett then went to apartment 3G. There Bradley made a telephone call, and then told Meggett that he needed an hour to get the heroin ready. Meggett left the apartment and returned in about an hour, only to discover that the heroin had not yet arrived. After another short wait, a man referred to as "the Nigerian" arrived and went into the kitchen with Bradley. Bradley then gave Meggett a clear plastic bag containing two ounces of heroin. Meggett left the apartment and went to a location in Manhattan where he sold the two ounces to Cleveland Baxter, an undercover New York City detective, for $12,000. Meggett returned to apartment 3G and gave Bradley $10,400.

The events of the second distribution began on August 24 when Baxter told Meggett that he was not pleased with the quality of the heroin purchased earlier and was interested in obtaining a better grade of heroin. Meggett passed this information on to Bradley by telephone and went to apartment 3G, where Bradley gave him a sample of the better heroin. On September 1 Meggett gave the sample to Baxter at a location in Manhattan, and told Baxter that the price of this kind of heroin was $4,000 or $5,000 per ounce.

Nothing else occurred until the final two distributions on December 15. On this date Meggett telephoned Bradley at apartment 3G. After Bradley stated that samples of heroin were available, Meggett went to the apartment and picked one up. Meggett then travelled to Manhattan, gave the sample to Baxter, and told him that the price was $6,500 per ounce. Baxter told Meggett to call him on his beeper in 30 minutes.

Meggett returned to apartment 3G and called Baxter, who stated that he wished to buy three ounces of heroin. Bradley gave Meggett the three ounces of heroin at apartment 3G and both Meggett and Bradley drove to a restaurant in Manhattan. Upon Baxter's arrival at the restaurant, Meggett went out with Baxter to Baxter's car, where Meggett gave him the three ounces of heroin. Both Meggett and Bradley were arrested.

Later in the evening of December 15, a magistrate issued a search warrant for apartment 3G. At the apartment the search team leader knocked loudly at the door and heard movement within the apartment. Because no one answered the door, the agents used a battering ram to gain entrance after a four minute delay. Once inside, agents found Emily Bradley, Bradley's wife, in the bathroom disposing of the contents of eleven clear plastic bags which were scattered through the bathroom. Agents found the toilet bowl refilling with

---

* The Honorable Thomas P. Griesa of the United States District Court for the Southern District of New York, sitting by designation.

water. An off-white powdery residue was discovered in the toilet bowl, on the toilet seat, in the wash basin and bathtub, and on the floor. Other items seized at the apartment were a small foil packet of cocaine, a triple beam balance scale, an empty bottle of cutting agent inositol, and over 100 empty vials with colored stoppers. Emily Bradley was placed under arrest.

The eleven empty bags were of the same type as the bag which contained three ounces of heroin involved in the December 15 transaction. A DEA agent testified that such bags typically contain approximately four ounces of heroin and that over $100,000 of heroin was probably destroyed by Emily Bradley.

Also seized at the apartment were five firearms. A .44 magnum, long-barreled revolver loaded with hollow point ammunition was found in a case behind a chair in the living room. Also found in the living room (precise location not shown) was a loaded .32 caliber revolver, better known as a "Saturday Night Special." A loaded Derringer was discovered in a nightstand drawer in the bedroom. A loaded sawed-off shot gun was found in the bedroom between the bedroom dresser and the wall. Finally, a .357 magnum handgun loaded with hollow point ammunition was found in the bedroom dresser. All the weapons were operable except the .32 caliber revolver. Agents seized an additional 25 pounds of hollow point ammunition.

After his arrest, Bradley admitted that he owned the guns found in apartment 3G, but stated that he did so only as a gun collector.

There is no evidence that firearms were present at any of the distributions in Manhattan. There is no evidence that any of the firearms in apartment 3G were fired, brandished, or even displayed during the events occurring at that apartment.

### Statute, Indictment and Jury Instruction

The statute on which the firearms charge in this case is based is 18 U.S.C. § 924(c), which provides:

(c)(1) Whoever, during and in relation to any crime of violence or drug trafficking crime, . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, . . . .

(2) For purposes of this subsection, the term "drug trafficking crime" means any felony violation of Federal law involving the distribution, manufacture, or importation of any controlled substance. . . .

Thus, a charge under § 924(c)(1) must allege not only the use or carrying of a firearm, but also a "predicate offense," either a crime of violence or a drug trafficking crime.

The indictment in the present case charged Bradley with six counts of drug trafficking crimes—a conspiracy count, four substantive counts of distribution,** and one substantive count of possession.

The firearms count specified the heroin conspiracy count rather than the substantive counts as its predicate offense. It should be noted that, although the indictment charges that the heroin conspiracy lasted from August 1 to December 15, the firearms count referred solely to the date of December 15.

Judge Leisure's instructions to the jury on the firearms count included the following language:

To convict a defendant on the charge in Count 7 of the indictment the government must prove each of the following elements beyond a reasonable doubt:

1. That on or about the date charged the defendant was carrying or using a firearm.

.    .    .    .    .

3. That the defendant carried or used the firearm during and in relation to the commission of a drug trafficking crime

---

** With regard to these four counts, the indictment charged distribution and possession with intent to distribute, but Judge Leisure instructed the jury only with respect to distribution.

for which he might be prosecuted in a court in the United States.

The first element the government must prove beyond a reasonable doubt is that the defendant was carrying or using a firearm on or about December 15, 1987.

.   .   .   .   .

You should note ... that in order for the government to sustain its burden of proof that the defendant used a firearm, it is not necessary for the government to establish that the weapon was fired. It is sufficient if the proof established that the firearm furthered the commission of the drug trafficking crime or was an integral part of the underlying crime being committed.

You should also note that in order to satisfy this element, the government need not show that the defendant actually carried the firearm on his possession. It is sufficient if you find that the defendant transported or conveyed the weapon or had possession of it in the sense that at a given time he had both the power and intention to exercise control over it.

## Contentions On Appeal

Bradley's principal contention on appeal is that he can be convicted under § 924(c)(1) only if he used or carried a firearm in connection with one of the distributions which were the objects of the conspiracy. Bradley contends that possession of firearms at an apartment some distance from the scene of the distributions could not justify the conviction. Bradley argues that, in any event, the guns at the apartment played no role in the narcotics conspiracy because they were not fired, brandished or handled in any way. Bradley urges that Judge Leisure's instructions did not properly interpret the statute and that there was insufficient evidence for conviction under a proper interpretation. Although no objection was made to the judge's instruction at the trial, Bradley contends that this is a case of "plain error," justifying him in raising the issue for the first time on appeal. *See United States v. Grossman,* 843 F.2d 78, 86 (2d Cir.1988).

## Discussion

### I.

Although the indictment charged Bradley with both using and carrying firearms, and Judge Leisure alluded to both using and carrying in his instruction, the judge's emphasis was properly on the concept of using. Our discussion hereafter will deal solely with the question of whether Bradley *used* firearms during and in relation to the heroin conspiracy.

■ A heroin conspiracy, punishable under 21 U.S.C. § 846, is a "drug trafficking crime" and may serve as a predicate offense for purposes of 18 U.S.C. § 924(c). *See United States v. Diaz,* 864 F.2d 544 (7th Cir.1988); *United States v. Torres,* 862 F.2d 1025 (3rd Cir.1988).

This leaves two issues to be resolved on appeal. *First,* did the presence of firearms in Bradley's apartment inside cabinets and behind furniture constitute "use" of these firearms? *Second,* must the use of the firearms occur in connection with the ultimate object of the conspiracy—*i.e.,* a distribution to a customer, or is it sufficient to have the use occur only at a preliminary stage of the conspiracy?

It is appropriate to describe in some detail the prior case law. In *United States v. Grant,* 545 F.2d 1309 (2d Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977), the defendant was convicted of possessing cocaine with intent to distribute. He was also convicted of violating the then § 924(c)(1), which provided that anyone who "uses a firearm to commit any felony" is guilty of a crime. The cocaine involved in *Grant* was located in a social club of which the defendant was the manager. The club had elaborate security arrangements, and in the interior of the club there were five guns. Four of the guns were in drawers and one was under the cushions of a couch. The Second Circuit held that the defendant had "used" the guns "as part of a tight security operation to protect large quantities of cocaine and hence to commit the felony of possessing cocaine with intent to distribute it." *Id.* at 1312.

In *United States v. Moore*, 580 F.2d 360 (9th Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978), the defendant was convicted of attempted bank robbery and of using a firearm to commit a felony. The defendant was arrested while walking toward the bank, wearing gloves and a ski mask. He was carrying a loaded pistol concealed in the waistband of his trousers. The Ninth Circuit affirmed the conviction. The court agreed with the *Grant* decision in the Second Circuit insofar as *Grant* indicated that there are situations in which mere possession of a gun can constitute "use" under § 924(c)(1), and further stated:

> The fact that Moore never had an opportunity to brandish or discharge his gun does not mean that he did not "use" it. Moore attempted to rob a bank and possession of a loaded gun was an integral part of the attempt. Moore "used" his gun, much as he used the gloves and ski mask. These items increased the likelihood of success; without them he probably would not have sallied forth.

*Id.* at 362.

In *United States v. Mason*, 658 F.2d 1263 (9th Cir.1981), the defendants were convicted of narcotics distribution and use of firearms under § 924(c)(1) because of the presence of the firearms in the car where the distribution took place. The matter was remanded for a new trial because of errors relating to the narcotics counts. However, the court found no error regarding the firearms charge. Although the guns had not been brandished or even displayed, they were an "integral part" of the operation and "the presence of the guns facilitated the illegal transaction." *Id.* at 1271. *See also United States v. Breckenridge*, 782 F.2d 1317, 1322–23 (5th Cir.), *cert. denied*, 479 U.S. 837, 107 S.Ct. 136, 93 L.Ed.2d 79 (1986) (approving a jury instruction defining "use" under § 924(c)(1) as possession of a gun in a manner which is an "integral part of the felony").

*United States v. LaGuardia*, 774 F.2d 317 (8th Cir.1985), was a case involving charges of narcotics possession in a residence and of using firearms by having them present in the residence. The Eighth Circuit affirmed the conviction, citing both *Grant* and *Moore* and stating:

> Section 924(c)(1) reaches the possession of a firearm which in any manner facilitates the execution of a felony.
> The weapons had undoubted utility in protection of the valuable supply and of the cash on hand.

*Id.* at 321. *United States v. Stewart*, 779 F.2d 538 (9th Cir.1985), dealt with a charge of "carrying" a firearm under the former version of § 924(c)(2). However, the language of the court is of interest regarding the application of § 924(c) in general:

> If the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred, then there is a violation of the statute.

*Id.* at 540.

Section 924(c) was amended in 1984 and again in 1986, resulting in the present wording, making it a crime to use or carry a firearm "during and in relation to any crime of violence or drug trafficking crime."

*United States v. Matra*, 841 F.2d 837 (8th Cir.1988) involved the current version of the statute. The defendant was convicted of possession of cocaine with intent to distribute and use of a machine gun during and in relation to the narcotics crime. The cocaine and a large amount of cash were in the bedroom of an apartment. The machine gun was hidden under a bed. In affirming the conviction, the court relied on *Grant, Moore* and *LaGuardia*, holding that the defendant's possession of the machine gun was an "integral part of his criminal undertaking," because it served to protect the cocaine and the cash. *Id.* at 842–43.

Another case involving charges of narcotics possession and the use of weapons,

based on the presence of both at certain premises, was *United States v. Robinson*, 857 F.2d 1006 (5th Cir.1988). In affirming the conviction, the court stated:

> As in *Matra*, the jury here could reasonably have concluded that Robinson "used" at least one of the firearms found in his house as a means of safeguarding and facilitating illegal transactions and as an integral means of protecting his possession of the cocaine.

*Id.* at 1010.

More recently, we held that a gun found in a dresser drawer of an apartment in which some of the defendants' narcotics paraphernalia was located had not been "used" within the meaning of § 924(c)(1). *United States v. Feliz–Cordero*, 859 F.2d 250 (2d Cir.1988). Implicitly recognizing the teaching of the prior case law to the effect that "use" requires possession of a gun under circumstances where the weapon is so placed as to be an integral part of the offense, we emphasized the absence of proof that the defendants in *Feliz–Cordero* had placed the weapon to have it available for ready use during the transaction.

■ To summarize, the cases are unanimous in holding that a defendant can "use" a firearm within the meaning of § 924(c)(1) without firing, brandishing or displaying it. Possession of a gun, even if it is concealed, constitutes "use" if such possession is an integral part of the predicate offense and facilitates the commission of that offense. Four of the cases—*Grant, LaGuardia, Matra* and *Robinson*—involved facts essentially the same as those in the present case—*i.e.*, possession of narcotics at premises where weapons were also located. The courts had no trouble in finding that the presence of these guns constituted "use" to protect the defendant's possession of the narcotics. The guns were an integral part of the narcotics offense and facilitated that offense.

In the present case there was no error in Bradley's conviction under § 924(c)(1). Judge Leisure's instruction was in accord with the relevant decisions. He correctly charged the jury that, in order for the Government to prove that Bradley used a firearm it need not be established that the weapon was fired, but it was sufficient to show that the firearm furthered the commission of the drug trafficking crime or was an integral part of such crime.

■ The evidence justified conviction. The jury could reasonably conclude that the five loaded firearms in Bradley's apartment were on hand to protect that apartment as a storage and processing point for large quantities of narcotics and that therefore the presence of weapons furthered or facilitated the narcotics operation and was an integral part thereof.

■ Bradley contends, however, that the use of the firearm or firearms must occur in connection with the ultimate object of the conspiracy as distinct from a preliminary stage, and that because there was no proof of the use of a firearm at the scene of the distribution in Manhattan he cannot be convicted under § 924(c)(1).

There is no merit to this argument. The conspiracy count in the indictment charged that it was "a part and object" of the conspiracy that Bradley and others would both distribute heroin and possess heroin with intent to distribute. Thus, Bradley's possession of heroin at his apartment was a "part and object" of the crime of conspiracy, just as much as distribution to an ultimate purchaser. Use of firearms in connection with such possession was a proper basis for conviction on the firearms count.

The judgment of conviction is AFFIRMED.