951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Danny A. MURPHY, Defendant-Appellant.
 No. 90-6400.
 United States Court of Appeals, Sixth Circuit.
 Dec. 19, 1991.
 
 Before RYAN and BOGGS, Circuit Judges, and DOWD, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Defendant Danny Alan Murphy appeals his conviction on charges of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count I), and use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count II). We are required to decide:
 
 
 2
 1. Whether the district court erred by failing to give a lesser included offense instruction of simple possession of marijuana; and
 
 
 3
 2. Whether the district court erred in denying Murphy's Fed.R.Civ.P. 29 motion for acquittal based on the insufficiency of the evidence on the firearm charge?
 
 
 4
 Murphy also challenges the admission of prior acts evidence under Fed.R.Evid. 404(b), the denial of a motion for a new trial, and the court's refusal to grant a mistrial based on a juror's reading of a newspaper article regarding the trial. We do not reach these issues, however, because a majority of the panel agrees that the drug trafficking conviction must be reversed because the trial court erroneously failed to give a requested lesser offense instruction. A majority, albeit differently composed, also holds, for the reasons stated hereafter, that there is insufficient evidence to support the conviction for use of the MAC 10 weapon during a drug trafficking offense. 18 U.S.C. § 924(c)(1).[1]
 
 I.
 
 5
 On March 23, 1990, acting on an informant's tip, agents of the Drug Enforcement Administration Regional Task Force and officers of the Kentucky State Police executed a search warrant of Murphy's house. Upon entering the house, the officers went to the freezer in the utility room where an informant, Mary Stokes, had told them that bags of marijuana would be found. The officers found four plastic bags containing approximately a pound and a half of marijuana, just as Stokes had described. The officers found thousands of marijuana seeds in the utility room and throughout the house. Subsequent testing at the DEA laboratory confirmed that 450 plants could be grown from the seeds found in the utility room but that the other seeds were not viable. In the room adjacent to the utility room, the officers found two or three boxes of plastic bags typically used to package marijuana for resale. The basement, where the officers found styrofoam cups, foil, high intensity lamps, and flower pots with marijuana, appeared to be a "grow house" for marijuana.
 
 
 6
 The search of the house also produced several weapons. In the living room, adjacent to the kitchen and utility room, the agents found a loaded Walther PPK pistol in a metal box. In Murphy's second floor bedroom, they found a loaded shotgun. In a closet in the attic crawl space, they discovered a .223 caliber rifle with a fully loaded clip inserted. On the floor next to the rifle, they found an aluminum case containing an Ingram MAC 10 automatic weapon, fully loaded ammunition clips, a silencer, black leather gloves, and a homemade radio frequency detector. In Murphy's truck, the officers found a .45 caliber pistol.
 
 
 7
 On April 18, 1990, a grand jury indicted Murphy on charges of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and two firearm offenses, later merged into one, in violation of 18 U.S.C. § 924(c)(1). A superseding indictment alleged the time frame of the drug offense as "[b]etween on or about December 1, 1989, and March 23, 1990."
 
 
 8
 The case was tried to a jury in August 1990. The government's case consisted of testimony of marijuana sales at Murphy's home outside the period charged in the indictment. Mary Stokes, a paid government informant, testified that she had known Murphy and his girlfriend, Gail Simmons, since 1979. Stokes testified that she went to Murphy's home once a week from approximately June 1986 through late 1987 to procure marijuana. Usually, Murphy would pack the marijuana in the kitchen and have Simmons bring it out to the purchaser. Stokes testified that Murphy required the purchaser to smoke with him to insure that the purchaser was not an undercover officer. During Stokes' visits, she observed six to seven large marijuana plants growing on the deck and was told that more was grown in the basement. She also observed that the freezer was packed with one pound baggies of marijuana, and that loaded guns were kept at the house. After a disagreement with Murphy in 1987, Stokes stopped visiting Murphy but continued to buy marijuana from Simmons. She did not return to Murphy's home until November 1989 when she observed approximately twelve bags of marijuana in the freezer.
 
 
 9
 Vicki Cooper testified that she smoked marijuana given to her by Simmons on a car trip with Murphy in October 1985. She did not remember whether Murphy smoked any marijuana on the trip. Two months later, she smoked marijuana at Murphy's home and was told by Simmons that "there's more of this where that came from." Cooper did not recall whether Murphy smoked any marijuana on this occasion either.
 
 
 10
 Vicki Cooper's husband, John Cooper, also testified for the prosecution. Cooper testified that he and his wife smoked marijuana at Murphy's home in February 1986. Cooper did not recall whether Murphy also smoked the marijuana but did recall that Murphy passed the marijuana to him. He also recalled that Simmons offered to sell them marijuana.
 
 
 11
 Barbara Riffe testified that beginning in 1987 or 1988 she went to Murphy's home to trade food for marijuana with Simmons. She testified that she never saw Murphy sell or give marijuana to anyone.
 
 
 12
 In presenting their case, the defense argued that Murphy possessed marijuana but not with the intent to distribute. Mary Stokes' former husband, Keith Hendricks, testified that he went with his wife to purchase marijuana and was told not to say anything to Murphy because the transaction was between Stokes and Simmons.
 
 
 13
 Gail Simmons testified that she grew the marijuana found in the house for her daughter who suffered from multiple sclerosis. She testified that Murphy smoked the marijuana and that she gave away and sold marijuana to Stokes. She denied that Murphy ever sold or gave away marijuana and stated that he disapproved of her doing so.
 
 
 14
 Michael Brown, a dealer in firearms, testified that Murphy bought the MAC 10 and silencer from him in 1970 as an "investment and collector's item" and that both were legally registered to Murphy.
 
 
 15
 At the conclusion of both the government's evidence and the entire case, the district court overruled defense motions for judgment of acquittal on both counts of the indictment. In discussing jury instructions, the district court also denied the defense's request for an instruction on the lesser included offense of possession of marijuana.
 
 
 16
 The jury convicted Murphy on both counts. The jury also found, pursuant to special interrogatories, that Murphy was guilty of using both the MAC 10 and the PPK handgun in connection with a drug offense.
 
 
 17
 Murphy then moved for a new trial and judgment of acquittal based on the court's refusal to give a lesser included offense instruction and on the insufficiency of the evidence. The court overruled the motion and sentenced Murphy to consecutive terms of six months on Count I and 360 months on Count II.
 
 II.
 A.
 Lesser Included Offense Instruction
 
 18
 A lesser included offense instruction should be given "if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit [the defendant] of the greater." Keeble v. United States, 412 U.S. 205, 208 (1973). Such an instruction should not be given unless "the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense...." United States v. King, 567 F.2d 785, 790 (8th Cir.1977), cert. denied sub nom. Lewis v. United States, 435 U.S. 945 (1978).
 
 
 19
 Murphy requested an instruction for simple possession, 21 U.S.C. § 844, a lesser included offense of possession with intent to distribute. United States v. Garcia-Duarte, 718 F.2d 42, 47 (2d Cir.1983); United States v. Burns, 624 F.2d 95, 104 (10th Cir.), cert. denied sub nom. Reynolds v. United States, 449 U.S. 954 (1980). The district court denied Murphy's request because if the jury "determine[d] that the United States has not prove[n] beyond a reasonable doubt any of the elements charged, then they come back not guilty." This reasoning, however, is flawed. As the Supreme Court explained:
 
 
 20
 [I]t is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction ... precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.
 
 
 21
 Keeble, 412 U.S. at 212-13 (emphasis in original). On the facts of this case, the district court erred in denying the lesser included offense instruction. Murphy admitted that Simmons grew marijuana in his home which he personally used. The amount of marijuana found at the time of the search, 1.5 pounds, is consistent with a defense of personal use. Murphy argued, moreover, that he did not possess the marijuana with the intent to distribute and there was no evidence at trial of distribution of marijuana by Murphy during the period charged in the indictment. Furthermore, Simmons and Hendricks testified that only Simmons distributed marijuana and that Murphy disapproved of her doing so. A rational jury, then, could have acquitted Murphy of possession with intent to distribute while convicting him of simple possession. As Keeble makes clear, the fact that Murphy might have been better off without the lesser included offense instruction is not a valid basis for denying a request for the instruction.
 
 B.
 Motion for Acquittal on Firearm Charge
 
 22
 Because we reverse the underlying conviction for failure to give a lesser included offense instruction, Murphy's conviction under 18 U.S.C. § 924(c)(1), which requires a conviction for a drug trafficking crime, is necessarily reversed. We address the issue concerning the use of the firearms, however, because we are of the opinion that the evidence was insufficient to support conviction under section 924(c)(1) for use of the MAC 10 weapon and because, that being so, Murphy may not be forced to defend against that charge on retrial.
 
 
 23
 Count II of the indictment charged Murphy with use of a MAC 10 automatic weapon and Walther PPK pistol during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). The MAC 10 was found in the attic crawl space near the upstairs bedroom and the Walther PPK pistol was found near the living room fireplace. Arguing that the government did not prove that these two weapons, which were not kept near the marijuana found in the utility room freezer, were used or carried "during and in relation to" a drug trafficking crime, Murphy moved for judgment of acquittal, pursuant to Fed.R.Crim.P. 29. The district court denied the motion. This court reviews the district court's denial of a Rule 29 motion by asking "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).
 
 18 U.S.C. § 924(c)(1) provides:
 
 24
 Whoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a ... machine gun, ... or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years.
 
 
 25
 Mere possession of a gun while engaging in criminal conduct is insufficient to convict under section 924. United States v. Brown, 915 F.2d 219, 224 (6th Cir.1990). The government must show some relation between the "use" of the firearm and the underlying drug trafficking crime. Id.; United States v. Feliz-Cordero, 859 F.2d 250, 254 (2d Cir.1988). Our circuit, however, has held that " 'uses' and 'carries' should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions." United States v. Acosta-Cazares, 878 F.2d 945, 952 (6th Cir.), cert. denied, 110 S.Ct. 255 (1989).
 
 1.
 Walther PPK Pistol
 
 26
 We agree with the district court that a reasonable juror could have concluded that Murphy "used" the Walther PPK pistol in relation to a drug trafficking offense. The pistol, although not located in the same room as the marijuana, was located in the room where Stokes and the Coopers testified the marijuana was delivered to purchasers, and where purchasers smoked with Murphy in order to show that they were not undercover agents or informants. In order to convict under section 924(c), the government need not show that the gun was kept with the drugs; it is sufficient that the weapon is in the same area of the place where drug transactions occur and thus accessible in an emergency. United States v. Lyman, 892 F.2d 751, 754 (8th Cir.1989), cert. denied, 111 S.Ct. 45 (1990). Murphy "used" the pistol then, within the meaning of section 924(c)(1), because he "had placed the weapon to have it available for ready use during the transaction." United States v. Meggett, 875 F.2d 24, 29 (2d Cir.), cert. denied sub nom. Bradley v. United States, 110 S.Ct. 166 (1989).
 
 2.
 MAC 10
 
 27
 We disagree with the district court that the evidence was sufficient to convict Murphy for "using" or "carrying" the MAC 10 "during and in relation to" a drug trafficking crime. There was no evidence that the MAC 10 was ever removed from its locked case in the attic closet. Thus, it could not be argued that the MAC 10 was displayed to purchasers in order to intimidate them. See United States v. Stewart, 779 F.2d 538, 540 (9th Cir.1985), cert. denied, 484 U.S. 867 (1987). The MAC 10, located two floors above the utility room, also was not used to protect Murphy's marijuana stash. See United States v. Henry, 878 F.2d 937 (6th Cir.1989). Nor was the MAC 10 used under a drug fortress theory where defendants "have ready access to weapons with which they secure or enforce their transactions." Acosta-Cazares, 878 F.2d at 952. The "mere availability of a firearm nearby" will not suffice where the firearm is not readily accessible. United States v. Theodoropoulos, 866 F.2d 587, 597 (3d Cir.1989). Thus, the court in Theodoropoulos reversed a section 924 conviction based on the presence of four firearms on the defendant's porch. Likewise, in Feliz-Cordero, 859 F.2d 250, the court held that the presence of a firearm in a dresser drawer was insufficient to convict under section 924:
 
 
 28
 [T]here is no basis to conclude that the gun would have been quickly accessible if needed. Rather, under the circumstances of this case, the intent to use the firearm must be presumed from the fact that a loaded gun was found in the same room as drug paraphernalia during the course of a search pursuant to a warrant. This is not sufficient evidence to sustain a conviction, even in light of our recognition of the frequent connection between firearms and narcotics trafficking.
 
 
 29
 Id. at 254. The present case is even weaker, as the MAC 10 was not even located near the drugs. Stored in a locked case in the attic crawl space, the MAC 10 was not accessible to protect the marijuana stored in the first floor freezer nor to intimidate purchasers in the first floor living room. Thus, the government failed to show that possession of the MAC 10 was " 'an integral part of the predicate offense and facilitate[d] the commission of that offense.' " United States v. Alvarado, 882 F.2d 645, 653 (2d Cir.1989) (quoting Meggett, 875 F.2d at 29), cert. denied, 100 S.Ct. 1114 (1990). In Theodoropoulos, Feliz-Cordero, and the present case, the government, by establishing nothing more than mere possession of a firearm during a drug trafficking crime, failed to meet its burden. In drafting section 924, "Congress required either use or carrying of a firearm. Had it intended the provision to encompass possession of a firearm during a drug trafficking offense it would have so provided." Theodoropoulos, 866 F.2d at 597-98. The evidence, then, was insufficient to convict on the section 924 charge with respect to the MAC 10 weapon; consequently, Murphy may not, in the event of retrial, be made to "run the gauntlet" with respect to that charge again.
 
 III.
 
 30
 For the foregoing reasons, we REVERSE and REMAND for a new trial.
 
 
 31
 BOGGS, Circuit Judge, concurring in part and dissenting in part.
 
 
 32
 I agree with Judge Ryan's opinion that the evidence in this case entitled Murphy to a lesser included offense instruction on simple possession. Of course, this does not mean that on retrial he may not again be convicted, as he was at the first trial, of possession with intent to distribute.
 
 
 33
 I disagree with my colleagues, however, with regard to the question of the MAC 10 firearm. The court's ruling means that we are determining, in advance of the actual trial and based on our general perception of the facts at issue here, that no reasonable juror could find that the MAC 10 weapon was being used in connection with a drug crime. For the following reasons, I disagree with that conclusion.
 
 
 34
 The law is clear, and the court's opinion ably sets forth, that a gun does not actually have to be held or seen during a transaction in order to be "used" in a drug trafficking offense. On the other hand, the possession of the gun cannot be completely unrelated thereto. These principles tend to be applied to a myriad of factual situations where the applicability of 18 U.S.C. § 924(c) ranges from the totally obvious to the wildly improbable. At one extreme, if a gun is sitting under the very table where the drug transaction is being carried on, there can be little doubt of the applicability of the statute. At the other extreme, a collection of antique fowling pieces contained in a ceremonial cabinet in another wing of the house in which a drug transaction is carried on could hardly be thought to be "used" in the transaction. In attempting to sort out the applicability of the statute to all of the intermediate situations, the courts have established several principles:
 
 
 35
 (1) The connection cannot merely be assumed, and must be submitted to the jury. See United States v. Morrow, 923 U.S. 427, 434-35 (6th Cir.1991).
 
 
 36
 (2) If a gun is "readily accessible" to a transaction, then § 924(c) is implicated. United States v. Acosta-Cazares, 878 F.2d 945, 952 (6th Cir.), cert. denied 110 S.Ct. 255 (1989).
 
 
 37
 (3) A gun may be found to be used even if not in some sense immediately accessible, if it is possible that it will ultimately be useable. A number of cases use the phrase "drug fortress" to indicate that guns may be acquired and placed in a house for the general purpose of protecting it against undesired intrusions, whether these intrusions be lawful or unlawful. United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989); United States v. Jackson, No. 90-1609 (6th Cir. Feb. 1, 1991) (unpublished).
 
 
 38
 In particular, the case of United States v. Matra, 841 F.2d 837 (8th Cir.1988), seems instructive. The case involved a very literal drug fortress, with multiple layers of protection. The primary drug apparatus was found on the first floor of the house, along with two weapons of differing calibers, and ammunition of three other calibers. There were three bedrooms on the second floor. One bedroom contained a pistol that matched one of the types of ammunition on the first floor. A second bedroom contained a rifle of a caliber different from any of those heretofore discussed. A third bedroom, which was locked but to which defendant had a key, contained a .357 pistol (ammunition on first floor), a .223 assault rifle (ammunition on first floor), and a 12-gauge shotgun (ammunition in same room). This room also contained ammunition for the rifle that was in the second bedroom.
 
 
 39
 In Matra, the Eighth Circuit had not difficulty in finding that a submachine gun, which was also in the third bedroom, was "used" in drug trafficking. The court said that Matra "did have ready access to the machine gun" even though it was on another floor in a locked room. Our own court, in Morrow, 923 F.2d at 439, upheld an instruction that required "the jury to find, at the very least, that the gun was available to the defendant and that its availability facilitated the carrying out of the drug-trafficking crime." (citing Matra )
 
 
 40
 In our case, we also have a situation that could easily be characterized as a drug fortress. Murphy's house was guarded by concertina wire and dogs "trained to kill." Near the actual site of the drugs there was a powerful pistol, and all members of the court agree that a reasonable juror could find that this gun was used in connection with the drug trafficking offense, even though there was no evidence that it was actually shown to anyone. (There was general evidence that "loaded weapons" were in the house, but no particular weapon was testified to.) At some remove from the freezer containing the marijuana, but in the defendant's own bedroom, was a yet more powerful weapon, a loaded shotgun. The closet in the "attic crawl space," which contained the extremely powerful and automatic MAC 10 weapon (as well as a loaded rifle and other defensive paraphernalia), was accessible from that bedroom.[1] There was also a .45 caliber pistol in Murphy's truck. It is also, in my opinion, extremely significant that ammunition clips for the MAC 10 were found in the first floor utility room, near the marijuana. In my opinion, all of this evidence could lead a reasonable juror to conclude that Murphy had constructed a system of "defense in depth" using these weapons to protect his criminal enterprise of distributing illegal substances.
 
 
 41
 Of course, a reasonable juror could certainly conclude the opposite from these facts, but that is not our decision to make. In my opinion, the multiplicity of weapons, their placement under circumstances that could indicate a chain of defenses, and the defendant's unquestioned access to the weapon through possession of the key to the gun case, all establish that the simple fact that the weapon was secreted in a somewhat out-of-the-way location does not mean that it could not be useful in the drug offense. The analogy to Matra is virtually exact. The room containing the primary weapons stash in Matra was locked, some distance away from, and on a separate floor from a stash of drugs and paraphernalia.
 
 
 42
 Increasing remoteness of physical location and difficulty of access to a weapon are factors that may easily induce a jury to harbor a reasonable doubt as to the usefulness of a weapon. However, until that connection becomes tenuous indeed, I would be loath to hold that no reasonable juror could find such a connection. In this case, I would hold that it is possible for a reasonable juror, based upon the evidence as presented in a future trial, to find that the MAC 10 could be used in a drug trafficking offense, and I therefore respectfully dissent.
 
 
 43
 DOWD, Circuit Judge, concurring in part and dissenting in part.
 
 
 44
 I concur in all aspects of Judge Ryan's opinion, except with respect to the reversal of Murphy' conviction for possession with intent to distribute marijuana. I would affirm the conviction and sentence for Count I, affirm the conviction of Count II as it relates to the Walther PPK pistol, vacate the sentence for Count II and remand for resentencing on Count II in view of the reversal of Count II as it relates to the MAC 10.
 
 
 45
 In my view, the district court properly denied the defendant's request for an instruction on the lesser offense of possession of marijuana. The defendant did not testify nor did he offer any testimony that the 1.5 pounds of marijuana was for his personal use. To the contrary, he offered the testimony of Gail Simmons who indicated that at an earlier time, 1986-1988, she had lived with the defendant at Murphy's house. Simmons testified that during that period, she had begun to grow marijuana at Murphy's house so that her daughter would have a source for marijuana. Simmons indicated that Murphy preferred that she grow the marijuana in the house rather than go into town for the purpose of securing marijuana from other sources. Simmons then moved out of the house, but continued to visit on weekends and inferentially, to tend to the growing marijuana plants. Only the defendant, not Simmons, had any possessory interest in the house. Viewing the defendant's case in a light most favorable to the defendant, it was demonstrated that the defendant allowed another person to use his home for the purpose of growing marijuana for the use of a third person, i.e. the daughter of Simmons.
 
 
 46
 In sum, that evidence demonstrated that the defendant allowed a person with no possessory interest in his property to grow marijuana for distribution to another person. The defendant has possession of the marijuana by virtue of knowingly permitting it to be grown in his house and he knew that its destination was another person, i.e. minimally Simmons and her daughter.
 
 
 47
 The statute, 21 U.S.C. § 841(a), makes illegal the possession of marijuana with the intent to distribute. The term "distribute" "means to deliver (other than by administering or dispensing) a controlled substance or listed chemical." 21 U.S.C. § 802(11). The statute defines "deliver" or "delivery" as "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship." 21 U.S.C. § 802(8). Cases involving distribution under this statute have upheld convictions for possession with the intent to distribute where the defendants aided and abetted the distribution of a controlled substance. U.S. v. Catchings, 922 F.2d 777 (11th Cir.1991); U.S. v. Lechuga, 888 F.2d 1472 (5th Cir.1989); U.S. v. Brunty, 701 F.2d 1375 (11th Cir.), cert. denied, 464 U.S. 848 (1983). Under the circumstances as presented by the defendant, it would have been error to instruct the jury on the lesser offense of possession. Accordingly, I respectfully dissent to the reversal of the defendant's conviction of Count I.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Judges Ryan and Boggs agree that the drug conviction (Count I) must be reversed. Judge Dowd dissents. Judges Ryan and Dowd agree that the evidence is insufficient to support the conviction for the use of a firearm as respects the MAC 10 weapon only (Count II). Judge Boggs dissents
 
 
 [1]
 Contrary to the statement at page 11 of Judge Ryan's opinion, I do not read the record to say that the MAC 10 was "two floors above the utility room...." The attic space is described as "off of a closet" in defendant's bedroom, and there is no indication that any stairs or climbing were involved in getting to that space