**UNITED STATES of America, Appellee,**

**v.**

**Curtis TAYLOR, Defendant–Appellant.**

**No. 436, Docket 93–1404.**

United States Court of Appeals, Second Circuit.

Argued Nov. 2, 1993.

Decided Feb. 15, 1994.

Henriette D. Hoffman, The Legal Aid Society, New York, N.Y., for defendant-appellant.

Steven M. Witzel, Assistant United States Attorney for the Southern District of New York, New York, N.Y., (Mary Jo White, United States Attorney for the Southern District of New York, Alexandra Rebay, Assistant United States Attorney for the Southern District of New York, New York, N.Y., of counsel), for appellee.

Before: OAKES, KEARSE, and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant Curtis Taylor appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York (Stanton, *J.*). The underlying four count indictment charged Taylor with (1) possessing heroin with intent to distribute, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C); (2) using and carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c); possessing a gun and ammunition which had been shipped in interstate commerce, after having been convicted of a felony, in violation of 18 U.S.C. § 922(g); and possessing an unregistered firearm without a serial number, in violation of 26 U.S.C. §§ 5861(d),(i). After a three-day trial, the jury convicted

Taylor on the three firearms counts. On appeal, Taylor contends that there was insufficient evidence to convict him of "use" of a firearm in violation of § 924(c). He further claims that the district court erred by admitting certain expert testimony.

For the reasons set forth below, the judgment of conviction is affirmed.

## BACKGROUND

On July 5, 1991, pursuant to information provided by two confidential informants, the New York City Housing Authority Police Department ("the police") obtained and executed a search warrant for the apartment occupied by Curtis Taylor. The government's evidence at trial showed that upon entering the apartment, the police found a fully loaded nine-millimeter submachine gun under a cushion of Taylor's living room couch. Also found within the apartment were the following: (1) approximately 237 glassine envelopes of heroin stamped with different logos, including "Goodyear" and "Public Enemy"; (2) ammunition for a machine gun, a submachine gun, various revolvers, and shotguns; (3) photographs of Taylor holding a submachine gun like the one found lodged in the living room couch; (4) envelopes addressed to Taylor at that address; (5) two notebooks containing references to various amounts of "Goodyear" and "PE," and recording transactions involving several thousands of dollars next to the names of various individuals, including "Curtis"; and (6) hundreds of empty crack vials and five vials of cocaine.

Taylor was arrested in the street outside the apartment when the police came to execute the search warrant. A four-count indictment was subsequently filed. Count One charged Taylor with possessing heroin with intent to distribute in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C). This count was later dismissed after Taylor pleaded guilty to the same conduct in New York State Supreme Court. Count Two charged him with using and carrying a loaded nine-millimeter submachine gun during and in relation to the distribution and possession of heroin with intent to distribute, in violation of 18 U.S.C. § 924(c). Count Three charged that Taylor, a prior felon, possessed a gun and ammunition which had been shipped in interstate commerce, in violation of 18 U.S.C. § 922(g). Finally, Count Four charged that his possession of the submachine gun also violated 26 U.S.C. § 5861(d),(i) because the firearm was not registered and lacked a serial number.

At trial, over the objection of defense counsel, the government elicited expert testimony concerning the use of the type of gun found in Taylor's apartment by drug dealers. Expert testimony was also given concerning the amount of heroin consistent with personal drug use.

After a three-day trial, the jury convicted Taylor on the three firearms counts. Taylor was subsequently sentenced to thirty years' imprisonment, to be followed by five years of supervised release.

This appeal followed.

## DISCUSSION

I. *Sufficiency of Evidence of Gun Use Charge*

On appeal, Taylor first challenges the sufficiency of the evidence supporting his conviction under 18 U.S.C. § 924(c), for using and carrying a firearm in relation to a drug trafficking crime. As a preliminary matter he claims that it was not proven that the weapon found in the apartment belonged to him. Next, Taylor essentially claims that there was insufficient evidence to support a finding of the requisite nexus between the drugs and the gun found in his apartment. For the reasons discussed below, we disagree with both of Taylor's contentions.

■ A defendant challenging the sufficiency of the evidence bears "a 'very heavy burden,'" *see United States v. Alkins*, 925 F.2d 541, 555 (2d Cir.1991) (citation omitted), as the evidence must be viewed " 'in the light most favorable to the government.'" *See United States v. Torres*, 901 F.2d 205, 216 (2d Cir.) (citation omitted), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). The relevant inquiry "is not whether this court believes that the evidence at trial established guilt beyond a reasonable

doubt.... [r]ather, an appellate court hearing a criminal case must uphold a conviction if *any* rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt." *United States v. Brown,* 937 F.2d 32, 35 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 323, 116 L.Ed.2d 264 (1991).

■ With these general considerations in mind, we turn to Taylor's claim that because five people lived in the apartment, it was not proven that the weapon found there was his. We disagree. Taylor seems to ignore other significant evidence. First, most of the other narcotics-related evidence was found in his bedroom. Also found there was a photograph of Taylor holding a gun identical to the one found under the sofa. In addition, Taylor's name was in the narcotics record book, and guns are recognized as "tools of the [narcotics] trade." *See, e.g., United States v. Crespo,* 834 F.2d 267, 271 (2d Cir.1987), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988). Accordingly, there was clearly sufficient evidence to permit a jury to find that the gun belonged to Taylor.

We next turn to the law concerning § 924(c) violations, and Taylor's specific claims regarding that charge. Section 924(c) provides, in relevant part, that

[w]hoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years, ... and if the firearm is a machine-gun, ... to imprisonment for thirty years.

This Court has on numerous occasions made it clear that a firearm need not actually be fired or exhibited during a drug trafficking offense to constitute "use" under § 924(c). *See, e.g., United States v. Medina,* 944 F.2d 60, 66 (2d Cir.1991) (finding "use" of firearm where defendant maintained a gun in the same room as his narcotics "buy money"), *cert. denied,* —— U.S. ——, 112 S.Ct. 1508, 117 L.Ed.2d 646 (1992); *United States v. Alvarado,* 882 F.2d 645, 654 (2d Cir.1989) (finding "use" of firearm where agents found several weapons "strategically located to protect the substantial quantities of cocaine that were packaged and sold in the apartment"), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990); *United States v. Meggett,* 875 F.2d 24, 29 (2d Cir.) (finding "use" of firearm where guns were scattered around apartment that was used for storing and packaging narcotics), *cert. denied,* 493 U.S. 858, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989). Rather, we have found "use" of a firearm under § 924(c) "where circumstances surrounding the crime indicate that the firearm was an integral part of the narcotics offense and facilitated that offense." *Medina,* 944 F.2d at 66 (quotations omitted).

■ In *United States v. Feliz–Cordero,* we explained that one way in which the above standard could be met was if "[t]he circumstances surrounding the presence of a firearm in a place where drug transactions take place suggest that it was strategically located so as to be quickly and easily available for use during such a transaction." *See* 859 F.2d 250, 254 (2d Cir.1988). Whether this scenario has been established is clearly a very fact-intensive question requiring a careful examination of, among other things, where the gun was located and what else was found in the apartment. *See, e.g., Alvarado,* 882 F.2d at 654 (noting placement of guns, drug paraphernalia, drugs, and cash in apartment).

■ Given the facts of this particular case, we find that the standard has been met. According to evidence at trial, the firearm, a nine-millimeter submachine gun, was found under a sofa cushion located approximately three feet from the front entrance to Taylor's apartment. Also found within the apartment were 237 glassine envelopes of heroin, hundreds of empty crack vials, five full crack vials, and two notebooks containing records of transactions involving thousands of dollars. The records contained references to "Curtis" and to the logos stamped on the glassine envelopes of heroin. Viewing this evidence in the light most favorable to the government, as we are bound to do, we find that a reasonable trier of fact could have inferred that the submachine gun was used to protect drug transactions that occurred in the apartment. *Cf. United States v. Lopez,* 756 F.Supp. 810, 820 (S.D.N.Y.1991) (finding evidence insufficient to support charge of use of

firearm in relation to drug trafficking crime where no drugs were found in apartment containing gun).

Taylor claims that the above inference is not supportable because there is no direct evidence that any drug transaction ever took place at his apartment. We disagree. Admittedly, we recognize that in the cases noted above where we found sufficient evidence to support a § 924(c) violation, there was direct evidence that a drug transaction occurred in the residence or that the residence was a drug storing or manufacturing plant. *See Meggett*, 875 F.2d at 25 (heroin involved in each drug transaction "originated from or passed through" apartment where gun was found); *Medina*, 944 F.2d at 66–67 (drug transaction for which defendant was arrested took place in apartment where gun was located); *Alvarado*, 882 F.2d at 647–48 (cocaine sold to confidential informant in apartment where guns were found); *see also United States v. Lindsay*, 985 F.2d 666, 672 (2d Cir.) (affirming § 924(c)(1) conviction where there was testimony that defendant conducted his drug-trafficking business from home where firearms were found and that defendant used firearms during some drug transactions), *cert. denied,* — U.S. —, 114 S.Ct. 103, 126 L.Ed.2d 70 (1993). We do not, however, find the lack of direct evidence of a drug transaction in the apartment dispositive of the § 924(c) claim. Rather, we find that in this case there is sufficient circumstantial evidence to allow a reasonable juror to infer that Taylor's apartment was a "place where drug transactions take place." Among other things found in the apartment were significant amounts of drugs and drug paraphernalia, along with detailed transaction records listing Taylor's name and the logos stamped on the glassine envelopes of heroin found within the apartment. This evidence, coupled with the other items found in the apartment and the gun's strategic location, was sufficient to support an inference that the gun was "an integral part of the narcotics offense and facilitated that offense." *See Meggett*, 875 F.2d at 29.

In sum, given the facts presented by the government, we find that there was sufficient circumstantial evidence for the jury to conclude that Taylor "used" the firearm found in his apartment in violation of § 924(c).

## II. *Admission of Expert Testimony*

Taylor next contests the admission of certain expert testimony. Specifically, he challenges the admission of certain statements concerning the use of guns by drug dealers, and the amount of heroin consistent with personal use. For the reasons discussed below, we affirm the district court's admission of these statements.

 In order for expert testimony to be admissible it must be relevant and not unduly prejudicial. Testimony will be relevant if it "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." *See,* Fed.R.Evid. 702. In deciding on the admissibility of expert testimony the "district court has broad discretion," *see United States v. Cruz,* 981 F.2d 659, 662 (2d Cir. 1992), and its decision will be upheld on appeal unless manifestly erroneous. *Id.*

### A. *Testimony on Types of Firearms*

 Taylor first challenges the admission of expert testimony on the use of guns by drug dealers. Special Agent Anthony Annunziato of the Bureau of Alcohol, Tobacco & Firearms testified that the submachine gun found in Taylor's apartment was a "high capacity semiautomatic pistol[ ] that [is] easy to reload with the use of a magazine" and that has a lot of "firepower." He further testified that drug dealers prefer these types of guns because they offer good protection for a "very dangerous profession."

Taylor claims that the testimony concerning drug dealers' preferences for high powered firearms was inadmissible because it was not beyond the ken of an average juror. He contends that once Annunziato testified to the characteristics of the gun and the ammunition, the jury was competent to come to its own conclusion about whether the gun's strength would be appreciated by drug dealers.

Even assuming *arguendo* that Taylor is correct, his challenge to the testimony still fails. Expert testimony may be used "on some occasions to explain even non-esoteric matters, when the defense seeks to discredit the government's version of events as improbable criminal behavior." *Cruz,* 981 F.2d at 664. Because in this case Taylor specifically disputed the government's claims that

**60**

the gun found in his apartment was linked to his drug trafficking, admission of testimony contesting Taylor's claims was admissible.

■ Equally unpersuasive is Taylor's contention that the introduction of the testimony was unduly prejudicial. We find it very unlikely that testimony that drug trafficking is dangerous would divert the attention of a New York jury from the dispositive issues of the case. Considering that the case itself dealt with whether firearms were involved in a drug trafficking offense, the dangers of drug trafficking could not be far from the jurors' thoughts. Indeed, unfortunately, the dangers of drug trafficking can never be distant from the minds of New York jurors. Accordingly, we affirm the district court's discretionary decision to allow the testimony.

B. *Testimony of Quantity of Drugs*

Taylor next challenges the introduction of the testimony concerning the amount of heroin found in his home. Police Officer Steven Carinci testified that when arrested, heroin users generally have only one glassine of heroin and that the most he had ever seized from a user was fourteen glassines. Because 237 glassines were found in Taylor's apartment, Carinci's testimony supported an inference that Taylor had the requisite intent to distribute. Taylor essentially contends that this testimony was irrelevant and prejudicial. We disagree.

■ In challenging the relevancy of the testimony, Taylor claims that because Officer Carinci's testimony was based on his experience with street arrests, it was not helpful in assessing the quantity of drugs found in Taylor's home. In making this argument, Taylor seems to overlook Carinci's statement that he had arrested drug users "[o]n the street, in the projects and also in the apartments inside the projects." Based on this statement, Carinci's observations are relevant to the jury's assessment of the quantity of drugs found in Taylor's apartment.

■ Taylor next claims that even if the testimony were relevant, it was inadmissible because it usurped the jurors' function by telling them that Taylor had an intent to distribute drugs—an ultimate issue that the jury had to decide. Again, we disagree. Although Carinci's testimony could be used by

the jury to conclude that the amount of heroin found in Taylor's apartment was probably for distribution purposes rather than for personal use, the jury was still free to reject that inference. Moreover, Carinci's testimony was helpful because the amount of heroin for personal use is hopefully not something within the ken of an average juror.

We have examined Taylor's remaining contentions on these issues and find them to be without merit. We find that neither the testimony concerning the use of guns by drug dealers nor the amount of heroin consistent with personal use was so irrelevant or prejudicial as to merit this Court's reversal of the district court's discretionary decision to allow the testimony.

CONCLUSION

Based on the foregoing, the judgment of the district court is affirmed.