*SUMMARY ORDER*

UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for the Western District of New York (Richard J. Arcara, *Judge*), it is hereby

**UNITED STATES of America,**
**Appellee,**

v.

**Brent BOYD and Herve Sourati,**
**also known as Brian Sinclair,**
**Defendants–Appellants.**

Nos. 00–1292(L), 00–1338.

United States Court of Appeals,
Second Circuit.

Jan. 16, 2001.

Mark A. Kaplan, for defendant-appellant, Brent Boyd, James M. Dingley, Roesler, Whittlesey, Meekins & Amidon, Burlington, VT, for defendant-appellant, Herve Sourati.

Gregory L. Waples, Assistant United States Attorney, Burlington, VT; Charles R. Tetzlaff, United States Attorney for the District of Vermont, for appellee.

Present FEINBERG, SOTOMAYOR, Circuit Judges, and HAIGHT, District Judge.*

88

UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for Vermont (William K. Sessions III, *Judge*), it is hereby

ORDERED, ADJUDGED AND DE-CREED that the judgment of the district court is AFFIRMED.

Brent Boyd ("Boyd") and Herve Sourati ("Sourati") appeal from convictions and sentences imposed in the District of Vermont (William K. Sessions III, *Judge*). Boyd pled guilty to one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371 and to four counts of mail fraud in violation of 18 U.S .C. §§ 1341, 2326, and 2. Sourati was found guilty, after a jury trial, of one count of conspiracy to commit mail and wire fraud and of twenty-five counts of mail fraud. The district court sentenced Boyd to 121 months imprisonment and Sourati to 37 months imprisonment. The district court also ordered that both defendants serve three years of supervised release and pay $4,405,800.74 in restitution. Defendants appeal a number of sentencing issues, each of which we reject as without merit.

 Boyd and Sourati appeal the district court's application of an enhancement of their sentences under Section 3A1.1(b) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") based on the vulnerable nature of their victims. Section 3A1.1(b) provides for a two-level enhancement if "the defendant[s] knew or should have known that a victim of the offense was a vulnerable victim," U.S.S.G. § 3A1.1(b)(1), "due to age, physical or mental condition, or [because a victim] is otherwise particularly susceptible to the criminal conduct." U.S.S.C. § 3A1.1, Application Note 2. We review the court's factual finding that a victim was vulnerable for clear error. *See United States v. Patasnik*, 89 F.3d 63, 72 (2d Cir.1996).

Defendants' fraud scheme involved selling gemstones to customers through false statements about the gems' value and the advantages of investing in them: As part of their scheme, defendants would have a special person called a "loader" contact customers who had already bought gems from defendants and try to convince them to make additional purchases. For example, if a victim wanted to sell the gems that he or she had already purchased, the loader would tell the victim that he had located a purchaser who wanted to buy not only the gems in the victim's collection but also additional gems that the victim did not have. The loader would then convince the victim to purchase the additional gems in order to complete the deal, and after the victim made the additional purchases, the loader would tell the victim that the purchaser had backed out of the deal to purchase the victim's gems.

The district court applied the vulnerable victim enhancement for two reasons: (1) defendants targeted numerous victims based on the fact that the victim had made earlier purchases and used their relationships with the victims to commit additional fraud; and (2) defendants tried to reload victims whenever the victims wanted to get out of the market. The court's application of the vulnerable victim enhancement was not clearly erroneous. We have previously upheld a vulnerable victim adjustment under similar circumstances, where "an important part of the scheme was the reloading process, whereby individuals who had already been victimized by the scheme were contacted ... more times and defrauded into sending more money to the [defendants]." *United States v. O'Neil*, 118 F.3d 65, 75–76 (2d Cir.1997); *accord United States v. Randall*, 162 F.3d 557, 560 (9th Cir.1998) (vulnerable victim enhancement appropriate because "[t]he 're-

loading' scheme at issue here seeks out people who have a track record of falling for fraudulent schemes"); *United States v. Robinson,* 152 F.3d 507, 510–12 (6th Cir. 1998) (applying vulnerable victim enhancement to reloading scheme); *United States v. Jackson,* 95 F.3d 500, 508 (7th Cir.1996) (stating that reloaded victims' "readiness to fall for the telemarketing rip-off" numerous times "demonstrated that their personalities made them vulnerable in a way and to a degree not typical of the general population").

■ Boyd appeals the district court's calculation of the amount of loss caused by defendants' fraud scheme. The offense level for fraud under the Guidelines is determined based on the amount of loss caused by the fraud. U.S.S.G. § 2F1.1. For fraud schemes involving misrepresentation of the value of an item, such as the scheme in this case, "the loss is the difference between the amount paid by the victim for the product and the amount for which the victim could resell the product received." U.S.S.G. § 2F1.1, Application Note 8(a). We review the district court's factual findings on loss for clear error and its conclusions of law *de novo. See United States v. Carboni,* 204 F.3d 39, 46 (2d Cir.2000). The district court need not determine the loss amount with precision but may "make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1, Application Note 9.

The district court here held a sentencing hearing to determine the loss amount. At the hearing, the Government presented evidence that the fraudulent scheme involved total sales of over six million dollars. The Government also presented expert testimony that the gems were generally worth approximately ten percent or less of the price paid by the victims. Based on this evidence, the district court determined that the loss amount was between five

million and ten million dollars, and accordingly applied a fourteen level enhancement under § 2F1.1(b)(1)(O).

Boyd disputes the factor the Government used, and the district court adopted, for converting Canadian dollars into American dollars and contends that the gems were worth approximately twenty percent, not ten percent, of the price paid by the victims. Boyd argues that if the district court had used the correct conversion factor and residual value of the gems, it would have applied a thirteen level enhancement § 2F1.1(b)(1)(N), rather than a fourteen level enhancement under § 2F1.1(b)(1)(O), because the loss amount would have been less than five million dollars.

The district court's finding that the loss amount is between five million and ten million dollars is not clearly erroneous. It was not unreasonable for the district court to use the conversion rate that defendants' company used in its own books because the court was merely converting back to United States dollars the figures that defendants' company had converted to Canadian dollars from United States dollars in its books. So long as the same rate was used in both conversions, the American dollar figure (which an American court must use in calculating the actual loss for sentencing purposes) remained the same, and it is irrelevant whether or not the conversion rate used conformed to the rate on the open currency market. Further, there was sufficient evidence to support the court's ten percent residual value figure, and, in any event, the court stated that even if it used Boyd's figure of twenty percent, the loss amount calculation would still be more than five million dollars.

■ Boyd also contends that the district court abused its discretion by denying him a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. The

**90**

district court's determination of whether a defendant is entitled to a reduction for acceptance of responsibility is given great deference and "will not be disturbed unless it is without foundation." *See United States v. Defeo,* 36 F.3d 272, 277 (2d Cir. 1994) (internal quotation marks omitted). The district court determined that Boyd had not accepted responsibility because, after being advised of the indictment in 1997 and engaging in negotiations to surrender, Boyd refused to surrender and became a fugitive, living around the world and spending as much as $500,000 of the victims' money until he was arrested in Cuba in August 1999. The court also noted that Boyd pled guilty only a few days before trial.

The district court's determination that Boyd had not accepted responsibility was not clearly erroneous. A number of indicators of acceptance of responsibility support the district court's determination: (1) Boyd did not "voluntar[il]y terminat[e] or withdraw[ ] from criminal conduct," U.S.S.G. § 3E1.1, Application Note 1(b); (2) Boyd did not "voluntar[il]y surrender to authorities promptly after commission of the offense," *id.,* Application Note 1(d); and (3) Boyd's plea immediately before trial did not evidence "timeliness ... in manifesting the acceptance of responsibility." *Id.,* Application Note 1(h). Additionally, Boyd is not "entitled to an adjustment under [§ 3E1.1] as a matter of right" merely for entering a plea. *Id.,* Application Note 3.

■ Sourati further argues that the Government did not prove each of the elements of fraud against him.[1] This Court must uphold a conviction "if any rational trier to fact could have found the essential elements of the charged crime beyond a reasonable doubt." *United States v. Taylor,* 18 F.3d 55, 58 (2d Cir. 1994) (internal quotation marks omitted). Viewing the evidence in the light most favorable to the Government, as this Court must do when considering sufficiency of evidence claims, *see id.* at 57, the Government presented sufficient evidence as to each element of the fraud claims. We reject Sourati's specific claim that the Government failed to prove his knowledge of the fraudulent scheme because the Government presented substantial circumstantial evidence of Sourati's knowledge. This evidence included: (1) Sourati gave different market quotations for the same gems to different customers on the same day; (2) he told customers that he had purchasers for their stones when no such purchaser existed; and (3) he continued in the fraudulent scheme after being confronted by a customer who was concerned that the company might be perpetrating a gem scam.

On appeal, Sourati also contends that the Government failed to prove that the victims were objectively reasonable. Sourati admits that he did not raise this issue in the district court, and therefore, we may only review this claim for plain error. *See* Fed.R.Crim P. 52(b); *Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Assuming *arguendo* that objective reasonableness is an element of federal fraud claims, we find no plain error occurred here because the Government presented sufficient evidence of the victims' background and education and of the plausibility of the scheme to allow a reasonable jury to determine that the victims were objectively reasonable. *Compare United States v. Davis,* 226 F.3d 346, 358–59 (5th Cir.2000) (fraud can be proven even if the victims' reliance was not objec-

---

1. Sourati also contends that the district court's restitution order violates the *ex post facto* clause. In a separate per curiam opinion filed today, we reject this argument.

tively reasonable); *United States v. Ciccone*, 219 F.3d 1078, 1083 (9th Cir.2000) (objective reasonableness of victim not an element of federal fraud statutes); *United States v. Biesiadecki*, 933 F.2d 539, 544 (7th Cir.1991) (same); *United States v. Maxwell*, 920 F.2d 1028, 1036 (D.C.Cir.1990) (same); *United States v. Brien*, 617 F.2d 299, 311 (1st Cir.1980) (same); *with United States v. Brown*, 79 F.3d 1550, 1559 (11th Cir.1996) (federal fraud scheme not proven where "the representation is about something which the customer should, and could, easily confirm—if they wished to do so—from readily available external sources").

We have considered appellants' remaining arguments and find them to be without merit. For the reasons discussed above, the judgment of the district court is hereby AFFIRMED.