**UNITED STATES of America, Appellee, Cross-Appellant,**

v.

**David J. LINDSAY and D.J. Lindsay, Inc., Defendants-Appellants,**

**David J. Lindsay, Defendant-Appellant, Cross-Appellee.**

**Nos. 1620, 1621, Dockets 91-1648, 91-1692.**

United States Court of Appeals, Second Circuit.

Argued May 22, 1992.

Decided Feb. 5, 1993.

Charles J. Wilcox, Troy, NY (The Wilcox Firm, of counsel), for defendant-appellant, cross-appellee.

Henry M. Greenberg, Albany, NY, Asst. U.S. Atty., N.D.N.Y. (Gary L. Sharpe, U.S. Atty., of counsel), for appellee, cross-appellant.

Before: PRATT and ALTIMARI, Circuit Judges, and KELLEHER, District Judge of the District Court for the Central District of California, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

In case # 91–1648, David J. Lindsay appeals from a judgment of conviction and sentence of the United States District Court for the Northern District of New York, Con. G. Cholakis, *Judge.* In case # 91–1692, the government cross-appealed the sentence, but thereafter requested the dismissal of the cross-appeal, because the solicitor general had failed to authorize the cross-appeal. *See* 18 U.S.C. § 3742. We therefore dismiss # 91–1692, and discuss only the appeal by Lindsay, # 91–1648. The notice of appeal recited that both David J. Lindsay and D.J. Lindsay, Inc. were appealing. No separate brief or argument has been presented on behalf of the corporation and we deem its appeal to have been abandoned.

## FACTS AND BACKGROUND

Although he was the proprietor of D.J.'s Lounge, a bar in Whitehall, New York,

David Lindsay sold more than alcohol from his tavern. From 1983 to 1988, Lindsay ran a drug operation which distributed millions of dollars worth of cocaine. On February 2, 1990, government agents arrested Lindsay on the basis of a criminal complaint alleging one count of conspiracy to possess cocaine with intent to distribute. Ultimately, in a second superseding 22–count indictment, filed on June 27, 1991, the government charged Lindsay, his corporation, and his girlfriend, Lisa Guitar, with multiple violations of federal narcotics and firearms laws. We address further facts as necessary in discussing the various issues raised by Lindsay.

Although Lindsay and his corporation were convicted as charged, and Guitar was convicted on one count of conspiring to possess cocaine with intent to distribute, this opinion deals only with Lindsay's convictions, which included 21 drug and firearm counts, and one count ordering the forfeiture of Lindsay's house and tavern under 21 U.S.C. § 853. Specifically, the jury convicted Lindsay of managing a continuing criminal enterprise ("CCE") (count 1), see 21 U.S.C. § 848; conspiracy to possess cocaine with intent to distribute (count 2), see 21 U.S.C. §§ 841, 846; possession of cocaine with intent to distribute (count 3), see 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(ii), and 18 U.S.C. § 2; possession of a firearm with an obliterated serial number (count 18), see 26 U.S.C. §§ 5842, 5861(h), and 5871; possession of three unregistered silencers (counts 19–21), see 26 U.S.C. §§ 5841, 5861(d), and 5871; and forfeiture of any interest of Lindsay or D.J. Lindsay, Inc., in Lindsay's house and D.J.'s Lounge (count 22), see 21 U.S.C. § 853.

The jury also convicted Lindsay of 14 violations of 18 U.S.C. § 924(c)(1)—using a firearm in relation to a drug-trafficking offense. Counts 4 through 10 imposed penalties for using seven firearms during and in relation to the CCE offense set out in count 1, and counts 11 through 17 imposed the same penalties for using the same seven firearms during and in relation to the cocaine-conspiracy offense set out in count 2:

| CCE | | Cocaine Conspiracy | |
|---|---|---|---|
| Count 4 | .22 caliber rifle w/silencer | Count 11 | .22 caliber rifle w/silencer |
| Count 5 | Raven Arms .25 caliber | Count 12 | Raven Arms .25 caliber |
| Count 6 | Mossburg .12 gauge shotgun Serial: J640709 | Count 13 | Mossburg .12 gauge shotgun Serial: J640709 |
| Count 7 | Mossburg .12 gauge shotgun Serial: J649775 | Count 14 | Mossburg .12 gauge shotgun Serial: J649775 |
| Count 8 | Remington 760 rifle Serial: A7098421 | Count 15 | Remington 760 rifle Serial: A7098421 |
| Count 9 | Smith & Wesson Model 1500 rifle Serial: PN74006 | Count 16 | Smith & Wesson Model 1500 rifle Serial: PN74006 |
| Count 10 | Savage rifle Serial: 267049 | Count 17 | Savage rifle Serial: 267049 |

As shown by this chart and as will be discussed in more detail below, the seven § 924(c)(1) violations set forth in counts 4 through 10, involving the use of seven different firearms in relation to the CCE offense, parallel the violations set forth in counts 11 through 17, involving the use of the same seven firearms, but in relation to the cocaine-conspiracy offense.

The district court sentenced Lindsay to 30 years' imprisonment on each of the

three drug-trafficking offenses, to run concurrently with each other; the 10-year sentences for each of counts 18–21 also run concurrently with the drug-trafficking sentences. The other significant aspect of Lindsay's sentence is the district court's imposition of mandatory 30-year terms for each of the two § 924(c)(1) silencer violations (counts 4 and 11), and five years' mandatory imprisonment for each of the 12 remaining § 924(c)(1) violations (counts 5–10 and 12–17). The district court provided that these § 924(c)(1) sentences would run concurrently with each other but consecutively to the other counts. Lindsay thus received, in effect, 30 years' imprisonment for the underlying offenses, plus a mandatory, additional 30-year term for the § 924(c)(1) violations. In sum, the district court imposed 720 months' imprisonment, 17 years' supervised release, and a special assessment of $1,050. The district court also ordered the forfeiture of Lindsay's home and tavern.

## DISCUSSION

We have carefully reviewed the record against Lindsay's challenges to certain evidentiary rulings, the jury charge, and the sufficiency of the evidence, and we find these challenges to be so lacking in merit as to be unworthy of further discussion.

We write, however, to address Lindsay's challenge to two significant aspects of his sentence: (1) the imposition of a sentence on count 2 for his cocaine-conspiracy conviction that is separate from the sentence on count 1 imposed for the CCE violation, and (2) the imposition of multiple sentences for his convictions for using multiple firearms during the commission of a drug-trafficking crime.

Our consideration of these sentencing claims deals more with form than with substance because, in the end, Lindsay's 60-year sentence remains unchanged by our disposition of this appeal. Getting to this result, however, requires considerable analysis, as we must focus both on the relationship between the sentences imposed for the CCE and the lesser-included cocaine-conspiracy violations, and on the rela-

tionship between these drug-trafficking convictions and the § 924(c)(1) firearms counts.

### A. Combination of Lesser-Included and Greater Offenses.

At sentencing, the district court imposed concurrent sentences for the convictions on count 1 (CCE) and count 2 (conspiracy to distribute cocaine). Lindsay points out, and the government agrees, that this was error.

■ Since Lindsay's narcotics conspiracy conviction is a lesser-included offense of the CCE violation, *see United States v. Benevento*, 836 F.2d 60, 73 (2d Cir.1987), *cert. denied*, 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988), it cannot be treated as a separate conviction for sentencing purposes. In the past, when the sentencing court has imposed a separate sentence on a lesser-included charge, we have vacated that sentence, but we generally have declined to vacate the lesser-included conviction. Instead, we have remanded the matter to the district court so that the lesser-included conviction may be " 'combined' with the conviction on the greater offense, although it is not 'merged out of existence.' " *Id.* (quoting *United States v. Osorio Estrada*, 751 F.2d 128, 135 (2d Cir. 1984), *modified on reh'g on other grounds*, 757 F.2d 27, *cert. denied*, 474 U.S. 830, 106 S.Ct. 97, 88 L.Ed.2d 79 (1985)).

■ We have previously acknowledged that our practice of "combining" convictions for lesser-included offenses with convictions for greater offenses is somewhat inconsistent with the Supreme Court's practice as described in *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), where the Court held that a convicted felon who handled a firearm on one occasion could not be punished for both receiving, *see* 18 U.S.C. § 922(h), and possessing, *see* 18 U.S.C.App. § 1202(a)(1), a firearm.

The district court in *Ball* had imposed concurrent sentences for the two violations, but the Supreme Court held that having

the sentences run concurrently still did not cure the double-punishment problem, citing to the potential adverse collateral consequences that stem from a separate conviction. *See id.*, 470 U.S. at 865, 105 S.Ct. at 1673 (collateral consequences might include delayed parole eligibility, increased sentence under recidivist statute for future offense, and impeachment of defendant's credibility). Instead, the Court remanded to the district court to exercise its discretion by vacating one of the two convictions.

In *United States v. Aiello*, 771 F.2d 621 (2d Cir.1985), decided after *Ball*, we noted that *Ball* did not address the possibility that the greater offense on which the district court imposed judgment on remand might subsequently be reversed, and thereby permit the defendant to completely escape punishment for his crime. *Id.* at 634. Thus, we continued our pre-*Ball* practice of combining a lesser-included conviction into a greater conviction, *see, e.g., Osorio Estrada*, 751 F.2d at 135, concluding that

> there is no practical difference between the Supreme Court's prescription to vacate a conviction and our practice of 'combining' a lesser conviction into a conviction on a greater offense, *except* that if the conviction on the greater offense were eventually to be overturned, our practice would, by design, resuscitate the lesser conviction and thereby ensure that the defendant would not avoid punishment for the lesser crime. We do not believe that the potential to reactivate a conviction in this way creates impermissible cumulative punishments.

*Aiello*, 771 F.2d at 634 n. 6 (emphasis in original).

We generally have followed this procedure. *See, e.g., United States v. Avelino*, 967 F.2d 815, 817 (2d Cir.1992) (vacating and remanding to the district court to combine two counts where defendant was convicted under separate statutory provisions for the same conduct); *Benevento*, 836 F.2d at 73 (vacating lesser-included narcotics-conspiracy sentence and remanding to district court to combine conviction on lesser offense with CCE conviction); *Aiello*, 771 F.2d at 634 (vacating sentences for two narcotics-conspiracy counts and one CCE count and remanding to district court to combine lesser-included conspiracy counts with CCE count). In *United States v. Coiro*, 922 F.2d 1008, 1015 (2d Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991), however, we cited *Ball* and remanded to the district court to vacate one of two convictions. *Coiro* involved a defendant convicted of two violations of the same statutory provision, and we determined that the statute did not authorize multiple prosecutions of the defendant's conduct. In that case, vacation of one of the convictions—rather than merging the convictions—was appropriate, because the statute only permitted a single conviction for the conduct at issue. With greater and lesser-included offenses, however, the government is authorized to prosecute the defendant for both crimes, so the merging of the convictions is allowable in the event that the greater conviction is subsequently reversed.

Thus, with the government's consent, we vacate Lindsay's sentence on count 2 and remand to the district court for resentencing on counts 1 and 2 after combining the conviction on the lesser count, count 2, with the greater conviction, count 1. *See, e.g., Benevento*, 836 F.2d at 73; *Aiello*, 771 F.2d at 634. Thus, Lindsay's conviction on the cocaine conspiracy would have future effect only in the event his conviction on count 1, CCE, should be later overturned. *See Benevento*, 836 F.2d at 73.

**B. Firearms Issues Under § 924(c)(1).**

Lindsay raises several challenges to his convictions for using firearms in relation to his drug-trafficking offenses. *See* 18 U.S.C. § 924(c)(1). Specifically, he argues (1) the evidence was not sufficient to sustain the § 924(c)(1) convictions, and (2) only one § 924(c)(1) conviction may be imposed in relation to a single drug-trafficking offense. Because seven of the § 924(c)(1) convictions were imposed in relation to a lesser-included offense, we also address (3) whether a § 924(c)(1) conviction may be imposed in relation to a lesser-included offense, where the defendant also was convicted of using the identical firearm in the

identical manner in connection with the greater offense.

### 1. Sufficiency of the Evidence.

■ In considering Lindsay's challenge to the sufficiency of the evidence on the § 924(c)(1) convictions, we must draw all inferences in the light most favorable to the prosecution, *see Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), and we must reject Lindsay's challenge if *"any* rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt." *United States v. Brown,* 937 F.2d 32, 35 (2d Cir.) (emphasis in original) (citation omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 323, 116 L.Ed.2d 264 (1991). When reviewed against these standards, the evidence was sufficient to support Lindsay's § 924(c)(1) convictions.

■ As for Lindsay's convictions on counts 4 and 11, using a firearm equipped with a silencer during a drug-trafficking offense, the evidence included testimony by Luke Wilson, a drug-trafficking associate who supplied Lindsay with narcotics. Wilson testified that, on one occasion, Lindsay had provided him with cocaine and, on that occasion, Lindsay had discharged a .22 caliber firearm with a silencer.

Another of Lindsay's associates, Joseph Gordon, testified that he saw Lindsay fire a .22 caliber rifle with a silencer outside Lindsay's tavern where cocaine had been stored. The government's inability to locate the firearm is not a bar to conviction, *see United States v. Castillo,* 924 F.2d 1227, 1230 (2d Cir.1991), and the jury was entitled to return a verdict of conviction on these counts where the evidence included, but was not limited to, (1) the testimony of two witnesses who saw Lindsay discharge the firearm, and (2) the silencer that was recovered by the government in a search of Lindsay's tavern.

■ Lindsay also challenges his convictions for using the other six firearms— counts 5–10 and 12–17. While Lindsay argues that the government could show only possession, but not use, of the firearms, the evidence could have led a rational jury

to conclude otherwise. We have held that a defendant's use of a firearm in relation to a drug-trafficking offense can be established "where circumstances indicate that the defendant intended to use the weapon by strategically placing it so that it could be available for use during a drug transaction." *United States v. Medina,* 944 F.2d 60, 66 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1508, 117 L.Ed.2d 646 (1992); *see also United States v. Meggett,* 875 F.2d 24, 29 (2d Cir.), *cert. denied,* 493 U.S. 858, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989). The jury could have concluded that the five firearms located in Lindsay's house were strategically placed for use during drug transactions, given evidence that included (1) the government's seizure of over $5,000 in cash from Lindsay's house, and of over $1,500 discovered in his bedroom; (2) testimony that Lindsay conducted his drug-trafficking business from his home; and (3) testimony that Lindsay used firearms during some of his drug transactions. As to the firearm found outside the house (counts 5 & 12), the jury also could have concluded from the same evidence that it was similarly used in relation to the drug-trafficking enterprise.

### 2. Multiple § 924(c)(1) Violations Based on Multiple Firearms in a Drug–Trafficking Offense.

We now address Lindsay's challenge to the multiple § 924(c)(1) convictions for using the seven firearms during and in relation to the drug-trafficking offenses. The gravamen of this part of Lindsay's claim is that where a defendant uses multiple firearms in relation to a drug-trafficking offense, he has committed only a single violation of § 924(c)(1), because congress did not intend to impose punishment for each firearm.

We must determine, then, whether the allowable unit of prosecution under § 924(c)(1) focuses on the drug-trafficking offense or on the individual firearms. As the Supreme Court has noted, "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a

single transaction into multiple offenses". *Bell v. United States*, 349 U.S. 81, 84, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). If we conclude that congress's intent is ambiguous, the rule of lenity would require us to conclude that the government may charge only one violation of § 924(c)(1) where the defendant uses multiple firearms in relation to a single drug-trafficking offense.

■ We turn first to the language of the statute itself, giving each word its ordinary meaning. *See, e.g., United States v. Bernier*, 954 F.2d 818, 819 (2d Cir.1992). Section 924(c)(1) provides in relevant part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime * * * for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to [the specified term of imprisonment].

18 U.S.C. § 924(c)(1) (emphasis supplied).

■ The government alleged Lindsay had committed fourteen § 924(c)(1) violations under the theory that he "used" the seven firearms during and in relation to (1) the CCE offense (counts 4 through 10) and (2) the cocaine-conspiracy offense (counts 11 through 17). The relevant definition of the word "use" is "to put into action or service", *Webster's Third New International Dictionary* 2253 (1971), and our prior cases have interpreted the word "use" in this section to include Lindsay's conduct, namely, the placement of several firearms on premises in order to further narcotics transactions. In *Meggett*, 875 F.2d at 26, for example, five firearms were recovered from the defendant's apartment, which was a storage and processing site for narcotics. The defendant in *Meggett* did not brandish or discharge the firearms, but we concluded that a defendant could "use" firearms where the presence of the firearms "furthered or facilitated the narcotics operation and was an integral part thereof." *Id.* at 29.

Significantly, however, the defendant in *Meggett* was charged with, and convicted of, only *one* § 924(c)(1) violation although there were five firearms in the apartment. *See also United States v. Alvarado*, 882 F.2d 645, 654 (2d Cir.1989) (defendant convicted for one violation of § 924(c)(1) based on three firearms seized from apartment where defendant processed and sold cocaine), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990). *But see United States v. Grant*, 545 F.2d 1309 (2d Cir.1976) (jury convicted defendant of *four* drug-trafficking crimes and *five* § 924(c) violations where five firearms were strategically placed to protect narcotics cache stored at after-hours social club, but parties failed to raise issue of whether § 924(c) permitted multiple convictions for use of multiple firearms), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977). Under the definition of "use" set forth in *Meggett* and *Alvarado*, the statute imposes criminal liability based on the act of creating or maintaining an arsenal, rather than imposing separate liability for each firearm seized.

Moreover, the statute provides that a defendant must use a firearm "during and in relation to" a drug-trafficking crime, 18 U.S.C. § 924(c)(1), thus requiring "some relation or connection between the firearm and the underlying crime." *United States v. Feliz–Cordero*, 859 F.2d 250, 254 (2d Cir.1988). The statute, then, emphasizes the relationship between the firearms and the underlying drug-trafficking crime, rather than the individual firearms themselves, thus providing some indication that congress did not intend a separate violation for each firearm.

To hold that the presence of each firearm in relation to a single drug-trafficking offense should be treated as a separate § 924(c)(1) infraction would expose defendants to enhanced penalties that congress may never have contemplated. For example, the statute's sentencing provisions provide for enhanced sentencing where a defendant has multiple § 924(c)(1) convictions:

> In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years, and if the firearm

is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to life imprisonment without release.

18 U.S.C. § 924(c)(1).

Although Lindsay was convicted of fourteen § 924(c)(1) violations, the district court did not impose the twenty-year sentence in this case for any of the convictions. The district court's practice therefore conflicts with our conclusion in *Bernier*, 954 F.2d at 818, that the "second or subsequent" language requires the imposition of the enhanced 20-year sentence, even where the defendant receives a second, but simultaneous, § 924(c)(1) conviction. In *Bernier*, the defendant was convicted of two separate bank robberies, and each § 924(c)(1) conviction was in relation to a different robbery; thus, we concluded that the enhanced 20-year penalty "must be imposed notwithstanding the simultaneity of the second conviction." *Id.* at 819.

Significantly for this case, however, Bernier "used" the firearms in relation to different violent crimes, and § 924(c)(1)'s reference to "second or subsequent" convictions may reasonably be construed to require, at the very least, that before the 20-year enhancement can be imposed a defendant must use the firearm "during and in relation to" a second or subsequent underlying drug-trafficking crime.

Further, the statute's sentencing provision states that "the term of imprisonment imposed under this subsection [shall not] *run concurrently with any other term of imprisonment* including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried." 18 U.S.C. § 924(c)(1) (emphasis supplied). As mentioned above, the district court required the § 924(c)(1) convictions to run concurrently with each other and consecutive to the underlying predicate offenses, which is contrary to this court's previous holding that the statute requires § 924(c)(1) convictions to be imposed consecutively to all other convictions. *See United States v. Lawrence*, 928 F.2d 36, 38 (2d Cir.1991) (relevant § 924(c)(1) language "requires the imposition of a sentence that cannot be suspended and cannot be allowed

to overlap with any other sentence"); *see also United States v. Stanley*, 928 F.2d 575, 582 (2d Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991). However, if congress intended to impose such a draconian penalty by requiring that a defendant be convicted and consecutively sentenced for each firearm connected with a single drug-trafficking crime, surely it would have said so in clear language.

Consequently, we conclude that congress considered the appropriate unit of prosecution to be the underlying drug-trafficking offense, not the separate firearms. Only where the defendant commits multiple drug-trafficking crimes or violent crimes, and the government can link the firearms to those crimes, *see, e.g., United States v. Privette*, 947 F.2d 1259, 1262–63 (5th Cir. 1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1279, 117 L.Ed.2d 505 (1992), may the government prosecute for multiple violations of § 924(c)(1). Where the government links multiple firearms to a single crime, only one § 924(c)(1) violation occurs.

We note that four other circuit courts have reached the same conclusion. *See United States v. Hamilton*, 953 F.2d 1344, 1346 (11th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 240, 121 L.Ed.2d 174 (1992); *United States v. Moore*, 958 F.2d 310, 314 (10th Cir.1992); *Privette*, 947 F.2d at 1262; *United States v. Henry*, 878 F.2d 937, 942–45 (6th Cir.1989).

The government, however, rejects these authorities and relies instead on *United States v. Freisinger*, 937 F.2d 383 (8th Cir.1991), to support its plain-language reading of the statute which, the government contends, would permit multiple § 924(c)(1) prosecutions. In *Freisinger*, the eighth circuit reasoned that "a statute which prefaces the object of the offense by the word 'a' is not ambiguous", *id.* at 389, and thus concluded that a defendant could be prosecuted for each weapon used during the commission of a single drug-trafficking offense. We disagree.

First, *Freisinger*'s main premise—that the word "firearm" is the "object" of the § 924(c)(1) offense—is unconvincing. We assume that the *Freisinger* court, in referring to the "object" of the offense, conclud-

ed that firearms were the principal subject of the § 924(c)(1) legislation. The *Freisinger* court therefore analogized § 924(c)(1) to 26 U.S.C. § 5861(d), for example, which punishes the defendant's receipt or possession of an unregistered firearm. *See, e.g., Sanders v. United States,* 441 F.2d 412, 414 (10th Cir.) (possession of each unregistered firearm constitutes separate offense under 26 U.S.C. § 5861(d)), *cert. denied,* 404 U.S. 846, 92 S.Ct. 147, 30 L.Ed.2d 82 (1971). Section 5861(d), however, targets firearms that are unlicensed or unregistered; thus, congress's intent to punish a defendant for each unregistered firearm is apparent from the statute's plain language. Section 924(c)(1), on the other hand, focuses on firearms only to the extent that they are used "during and in relation to" drug-trafficking crimes. Drug-trafficking crimes, then, must also be viewed as a subject of the § 924(c)(1) offense. Thus, the *Freisinger* court's plain language approach—which focuses only on the statute's reference to firearms—is flawed.

Second, in reaching its conclusion that the use of the word "a" before the word "firearm" removes any potential ambiguities from § 924(c)(1), *Freisinger* relies on our decision in *Coiro,* 922 F.2d at 1008. *Coiro,* however, does not stand for such a broad proposition. In *Coiro,* the government charged the defendant with obstructing a criminal investigation. The relevant statute punishes anyone who "endeavors [by various means] to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator * * *." 18 U.S.C. § 1510(a). Coiro had concocted one false story for two associates to tell to government investigators, *Coiro,* 922 F.2d at 1012–13. The government, noting that the statute prohibits interferences with communication "by any person" to a government agent, contended that congress intended "to make each individual interfered with the subject of a separate count under the statute." *Id.* at 1014. Thus, the government asserted that Coiro's communication to his two associates of the same story at the same time constituted two violations of § 1510(a).

While our analysis of the "any person" language in the *Coiro* statute noted that "the word 'any' has 'typically been found ambiguous in connection with the allowable unit of prosecution,' for it contemplates the plural, rather than specifying the singular", *Coiro,* 922 F.2d at 1014 (quoting *United States v. Kinsley,* 518 F.2d 665, 668 (8th Cir.1975)), this analysis was not the sole basis for our conclusion that the statute was ambiguous. Instead, we noted that, besides referring to the number of people interfered with, the statute focused on the act of obstructing and, furthermore, that it proscribed "an 'endeavor' to obstruct the communication of information." *Id.* at 1014. When viewed in this context, we concluded that the statute was ambiguous because congress had not clearly indicated that a single incident—the same communication of the same false story at the same meeting—could form the basis for multiple prosecutions, simply because the defendant had communicated the story to two individuals.

When viewed as a whole, this firearms statute, like the obstruction statute in *Coiro,* is ambiguous as to the appropriate unit of prosecution. Section 924(c)(1) concerns the relationship between firearms and violent crimes or drug-trafficking offenses. It is not clear that congress sought to punish a defendant separately for every firearm used during a single drug-trafficking offense, rather than punish the defendant for the general act of using firearms in relation to the underlying drug offense. When these ambiguities are viewed in conjunction with the draconian mandatory penalties that would accompany the imposition of multiple § 924(c)(1) convictions, we cannot conclude that congress sought to impose separate, consecutive penalties on a defendant for every weapon used during a single drug-trafficking offense.

Though meagre, the legislative history confirms our conclusion as to the statute's ambiguity. The materials comprising the legislative history of § 924(c)(1)'s original version are sparse, *see, e.g., Busic v. United States,* 446 U.S. 398, 405, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980), and there is little in those materials, or in the legislative history accompanying subsequent amend-

ments to the statute, that sheds light on the issue. Congress enacted § 924(c)(1)'s original version as an amendment to the Omnibus Crime Control and Safe Streets Act of 1968. *See* Gun Control Act of 1968, Pub.L. 90–618, § 924(c), 82 Stat. 1213, 1224 (1968). One of the principal sponsors of the bill, Representative Poff, noted that the purpose of the amendment was

> to persuade the man who is tempted to commit a Federal felony to leave his gun at home. Any such person should understand that if he uses his gun and is caught and convicted, he is going to jail. He should further understand that if he does so a second time, he is going to jail for a longer time.

114 Cong.Rec. 22,231 (1968).

Although later amended, § 924(c)(1) still focuses on the relationship between federal crimes and use of a firearm. Congress apparently was concerned more with the number of underlying drug-trafficking crimes committed by the defendant, than with the number of firearms used in relation to any particular offense. *See, e.g., Bernier,* 954 F.2d at 820 ("the legislative history makes clear the intent of Congress to deter multiple commissions of a crime with a gun").

Since congress failed to specify the firearm as the appropriate unit of prosecution under § 924(c)(1), we invoke the rule of lenity, *see Coiro,* 922 F.2d at 1015, and conclude that a defendant who uses multiple firearms in relation to a single drug-trafficking crime may be charged with only one violation of § 924(c)(1). Thus, the government should never have charged multiple § 924(c)(1) violations in relation to each of the two underlying drug-trafficking violations with which Lindsay was charged. ■ Even though all fourteen of the sentences were imposed to run concurrently, six of Lindsay's seven § 924(c)(1) convictions in relation to the CCE offense must be vacated, and six of his seven § 924(c)(1) convictions in relation to the cocaine conspiracy offense must be vacated. *See id.* (citing *Ball,* remanding two obstructing-criminal-witness convictions *under same statute* with instruction that district court vacate one of the convictions).

As for which convictions must be vacated, we deferred in *Coiro* to the discretion of the district court, and permitted it to choose which of the two witness-tampering convictions that it would vacate. *Coiro,* 922 F.2d at 1015. We cannot do so in this case, however, because congress clearly intended to impose the heavier mandatory penalty—30 years—for the use of firearms equipped with silencers. *See Moore,* 958 F.2d at 314 (after holding that use of multiple guns in relation to single offense constitutes one § 924(c)(1) violation, tenth circuit directs district court to enter conviction on count requiring 10–year sentence for using machine gun, and to dismiss count requiring only five-year sentence). Upon remand, then, the district court must vacate the convictions with the less severe sentences (counts 5–10 and counts 12–17), and leave standing the remaining two convictions: count 4 (using a firearm equipped with a silencer in relation to the greater CCE offense) and count 11 (using a firearm equipped with a silencer in relation to the lesser-included, cocaine-conspiracy offense). There still remains a question as to the proper disposition of these two § 924(c)(1) counts.

### 3. Section 924(c)(1) and Lesser–Included Offense.

After concluding that a defendant may be convicted for only one § 924(c)(1) violation where he uses multiple firearms in relation to a drug-trafficking offense, we must still determine the proper procedure for handling the remaining § 924(c)(1) violations—counts 4 and 11. As we discussed earlier, the cocaine-conspiracy crime is a lesser-included offense of the CCE violation, *see Benevento,* 836 F.2d at 73; thus, we are confronted with the issue of whether congress intended that a § 924(c)(1) conviction be imposed in relation to a lesser-included crime where a § 924(c)(1) conviction is imposed for the same conduct in relation to the greater offense.

■ The government's theory was that Lindsay used the identical firearm equipped with a silencer in count 4 in exactly the same manner that he used it in count 11. Thus, the only element in the § 924(c)(1) violation charged in count 4 that

is different from the corresponding § 924(c)(1) violation in count 11 is the underlying drug-trafficking offense.

In *United States v. Chalan,* 812 F.2d 1302 (10th Cir.1987), *cert. denied,* 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988), the court was faced with a defendant convicted of two § 924(c) violations for using the same firearm in relation to (1) one count of first-degree murder and (2) one count of robbery arising out of the same incident. The court in *Chalan* determined the murder and robbery counts constituted a single offense for double jeopardy purposes under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), where the Supreme Court held that "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182 (citing *Gavieres v. United States,* 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489 (1911)). Given that the robbery and murder counts constituted a single offense under § 924(c)(1), the *Chalan* court concluded that under the statute the defendant could be convicted of only one § 924(c)(1) violation, because he had committed only one "crime of violence" under the statute.

Similarly, the greater CCE offense and the lesser-included cocaine-conspiracy offense can be viewed as a single "drug trafficking crime" as defined by the statute, and we agree with the court in *Chalan* that the statute is ambiguous as to whether congress intended that a defendant should be convicted of two § 924(c)(1) violations in relation to greater and lesser-included offenses. *See Chalan,* 812 F.2d at 1317.

In *Chalan,* the court ordered the district court to vacate one of the § 924(c)(1) convictions. However, as we discuss in part A, *supra,* such a procedure does not take into account the possibility of a subsequent successful attack upon the greater CCE offense and its related § 924(c)(1) conviction. Thus, following this circuit's procedure, we think the appropriate disposition would be to vacate Lindsay's sentence on count 11 and remand to the district court for resentencing on counts 4 and 11 after combining the § 924(c)(1) conviction related to the lesser-included, cocaine-conspiracy offense, count 11, with the § 924(c)(1) conviction related to the greater CCE offense, count 4. As with the greater and lesser-included offenses, Lindsay's § 924(c)(1) conviction on count 11 would have future effect only in the event that the § 924(c)(1) conviction on count 4 should be later overturned.

## SUMMARY

The convictions on counts 5–10 and 12–17 are reversed and dismissed; because these 12 convictions are dismissed, the mandatory special assessment—$50 for each conviction—is reduced from $1,050 to $450. The other convictions are affirmed. The case is remanded to the district court for resentencing in accordance with this opinion, after combining the convictions on counts 1 and 2, and combining the convictions on counts 4 and 11.