**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Ronald TAYLOR (92–6548); and Michael
Nash (92–6549), Defendants–
Appellants.**

Nos. 92–6548, 92–6549.

United States Court of Appeals,
Sixth Circuit.

Argued and Submitted Aug. 17, 1993.

Decided Jan. 14, 1994.

Daniel A. Clancy, U.S. Atty., Joseph C. Murphy, Jr., Asst. U.S. Atty. (argued and briefed), Memphis, TN, for U.S.

Timothy R. Holton (briefed), Crow & Holton, Memphis, TN, for Ronald Taylor.

Stephen B. Shankman (briefed), Patricia A. Crowell (argued), Monroe, Shankman & Kaufman, Memphis, TN, for Michael Nash.

Before: MERRITT, Chief Judge, and BROWN and WELLFORD, Senior Circuit Judges.

MERRITT, Chief Judge.

This is an appeal from defendants' convictions for violations of federal narcotics and firearms laws. The most significant issue is a mandatory minimum sentencing question raised by the court *sua sponte* at oral argument, the issue discussed below in Section IV.

A five-count indictment was filed in the Western District of Tennessee on September 11, 1990, against six defendants, including Nash and Taylor. Count 1 charged Nash and Taylor with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); Counts 2 and 3 charged Nash and Taylor with aiding and abetting each other in using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2. Count 2 is differentiated from Count 3 only by the gun named in each count: Count 2 refers to a sawed-off 12–gauge Stevens shotgun, while Count 3 refers to a sawed-off 12–gauge Weatherby shotgun. A jury found Nash guilty of all three counts, and the District Court sentenced him to 27¼ years. The District Court dismissed Counts 2 and 3 against Taylor, and the jury adjudged Taylor guilty on Count 1. The District Court sentenced him to 41 months imprisonment.

On appeal, both defendants argue that the case should have been dismissed due the cumulative effects of multiple Jencks Act violations. Taylor argues that there was insufficient evidence to convict him of Count 1, and Nash argues that there was insufficient evidence to convict him of the weapons charges. After the Court raised the issue at oral argument, the parties also filed supplemental briefs addressing the legality of convicting and sentencing Nash on two § 924(c) weapons violations where the two weapons were used or carried in relation to a single predicate drug trafficking offense. For the

reasons set forth below, we affirm the District Court on all issues except the legality of Nash's § 924(c) convictions and sentences.

## I.

On August 29, 1990, Floyd Bonner, a detective with the Shelby County Sheriff's Office in Memphis, received information from a paid confidential informant, Ricky Gillum. Gillum told Bonner that he had arranged a purchase of 250 grams of cocaine from an individual named "Red," later identified as Eddie Smith. Bonner was to pose as the purchaser of the drugs during the deal, which was planned to take place in a grocery store parking lot. That evening, Bonner and Gillum rode together in an undercover vehicle to the grocery store lot. At least eight undercover officers were also in the lot. When Smith drove into the lot a short time later, Gillum exited Bonner's vehicle and got into Smith's van. Gillum and Smith then drove to the Bellevue Hotel, located just south of the grocery store lot and spoke briefly with defendant Michael Nash. Gillum testified that while in the hotel parking lot, Nash also spoke with occupants of a blue Mercedes.

Defendant Ronald Roosevelt testified at trial that earlier on August 29, 1990, he rode in a Buick to the Bellevue Hotel with Nash and defendant Calvin Pennington. When they arrived at the hotel, Nash exited the car and told Roosevelt and Pennington to go and "get them things." Roosevelt testified that he understood Nash's reference to "things" to mean guns. Roosevelt and Pennington drove to Pennington's residence, retrieved two shotguns and then returned to the hotel. When they returned, Nash was in the parking lot and instructed them to meet in the grocery store parking lot. Roosevelt testified that he and Pennington were to watch Nash's back in case anything went sour during the impending drug deal.

Smith and Gillum left the hotel lot and returned to the grocery store lot. Gillum went back to Detective Bonner's car and told Bonner that the deal was to take place in front of the grocery store. Gillum then re-

turned to Smith's van. At this point, Nash arrived on foot in the parking lot and the blue Mercedes and the Buick were in the lot. Defendant Oliver, the driver of the Mercedes, went into the grocery store. Defendant Taylor, the passenger of the Mercedes, got out of the car, approached Nash and showed or handed Nash two packages.[1] Nash then went to the Buick in which Pennington and Roosevelt were seated, and instructed Roosevelt to give him the drugs. When Roosevelt asked Nash where the drugs were located, Nash informed him that they were under Roosevelt's seat. Roosevelt handed Nash a brown paper sack. Nash took the sack to Smith's van, got in and showed Gillum its contents: four smaller plastic bags containing a white powder substance. Gillum left the van, and the signal was given for the officers to move in and arrest the defendants.

While effecting the arrests, Officer Blackwell testified that he observed Nash drop the paper sack as he attempted to get out of the van. Officers recovered the sack which was later determined to contain 110 grams of cocaine. The officers also recovered two shotguns from the Buick in which Pennington and Roosevelt were riding, and a small amount of cocaine from the Mercedes in which Oliver and Taylor were riding. Later, while at the police station, Nash made statements to law enforcement officers. Officer Blackwell testified that Nash stated that Pennington and Roosevelt "were out there to handle the situation if it went bad."

On September 10, 1990, a grand jury returned a five-count indictment against Nash, Taylor, Smith, Roosevelt, Pennington, and Oliver. The indictment charged the defendants as follows:

Count 1—possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); all six defendants

Count 2—using and carrying a firearm (a sawed-off 12–gauge Stevens single shotgun) during and in relation to a drug trafficking crime (namely, Count 1) in violation of 18 U.S.C. § 924(c); all defendants except Roosevelt

---

1. The record is ambiguous as to whether any-     thing actually passed between Nash and Taylor.

Count 3—using and carrying a firearm (a sawed-off 12–gauge Weatherby shotgun) during and in relation to a drug trafficking crime (namely, Count 1) in violation of 18 U.S.C. § 924(c); all defendants except Pennington

Count 4—possession of an unregistered firearm (the Stevens shotgun); defendant Pennington

Count 5—possession of an unregistered firearm (the Weatherby shotgun); defendant Roosevelt

Officers Bonner and Blackwell testified for the government at trial. After the direct examination of each witness, the defense requested all Jencks Act materials relating to that witness. The government provided a copy of Bonner's grand jury testimony and reports prepared by each officer. After the witnesses' testimony, however, defense counsel learned that the government possessed transcripts of Bonner's and Blackwell's testimony given in a seizure hearing for a related proceeding. The District Court determined that these materials were Jencks materials and should have been provided to the defense, but found that the government's failure to provide them had been an oversight, not intentional or in bad faith. As a remedy for this violation, the court provided the defendants with the opportunity to recall Bonner and/or Blackwell and to cross examine them regarding the transcripts. Neither of the defendants elected to do so.

During Bonner's testimony, he referred to a drug sample that the prosecution had sent for toxicology testing. The sample was extracted from 1.4 grams of suspected cocaine seized from the Mercedes in which Taylor and Oliver were riding. The prosecutor failed to notify the defendants that the testing was done, and never gave the toxicology reports to the defendants. A bench conference was held during which the prosecutor stated that he had inadvertently failed to provide defense counsel with the test results. When the prosecutor further informed the court that he was unable to locate the test results, the court ruled that the 1.4 grams of cocaine could not be admitted as evidence.

The defendants also requested Jencks material regarding ATF agent Robin King at the close of her direct testimony. The prosecutor initially indicated that no such materials existed. During cross examination, however, King stated that she had prepared notes regarding her examination of the weapons seized during the arrests. Upon receiving and reviewing those notes, defense counsel discovered references to King's own grand jury testimony which the prosecutor had not provided. Pursuant to the Jencks Act, 18 U.S.C. § 3500(d), the District Court struck King's testimony.

At the close of the government's proof, the District Court dismissed Counts 2 and 3 against Taylor. The jury convicted Taylor of Count 1, and convicted Nash on Counts 1, 2 and 3. The District Court sentenced Taylor to a 41–month term of imprisonment on Count 1. The court sentenced Nash to a total of 27¼ years incarceration as follows: 27 months for the narcotics conviction (Count 1); five years for the first § 924(c) firearm conviction (Count 2) to run consecutively to Count 1; and twenty years for the second § 924(c) firearm conviction (Count 3) to run consecutively to the other two sentences. Nash and Taylor then filed timely notices of appeal.

During oral argument, this Court raised the question of the legality of convicting and sentencing Nash for two violations of § 924(c) when the two guns were used in relation to the single drug trafficking episode. Following the argument, the parties filed supplemental briefs addressing the issue.

## II.

Both defendants argue that the District Court erred when it imposed various remedial sanctions short of dismissing the indictment for the prosecutor's violations of two discovery rules. They argue that the "cumulative effect" of multiple Jencks Act violations and a violation of Fed.R.Crim.P. Rule 16(d) necessitated dismissal. The government, in contrast, argues that the District Court properly exercised its discretion in crafting appropriate sanctions for the errors made by the government and should therefore be affirmed.

■ . The Jencks Act requires that the government disclose any written statement, signed, adopted or approved by the witness, which relates to the subject matter of the witness's testimony. Such disclosure must be made after the witness's direct examination testimony, and is mandatory if the defendant makes a timely motion. 18 U.S.C. § 3500(b). When a prosecutor "elects not to comply" with the Jencks Act requirements, the court shall strike the testimony from the record or shall declare a mistrial. .18 U.S.C. § 3500(d). The District Court is limited to these harsh remedies of subsection (d) only when the government "elects" not to comply; in other words, only when the government intentionally or consciously chooses to ignore the disclosure requirements under the statute. When there is no bad faith or motive to suppress, and when any prejudice is curable at trial, the government has not "elected not to comply" and subsection (d) does not control. When the violation occurs through negligence or oversight, the trial court has the discretion to formulate remedies as justice requires under the circumstances of the case. *United States v. Pope*, 574 F.2d 320, 325–26 (6th Cir.), *cert. denied*, 439 U.S. 868, 99 S.Ct. 195, 58 L.Ed.2d 179 (1978).[2]

■ In the instant case, the first violation occurred when the defendants requested the production of all Jencks material relating to Officers Bonner and Blackwell. The defendants have not disputed the District Court's finding that the prosecutor's failure to turn over the seizure hearing transcripts was an oversight rather than an intentional violation of Jencks. Based on that finding, the District Court was not limited to the § 3500(d) sanctions but instead was entitled to craft and apply a remedy that would best serve the interests of justice in the case. *See Pope*, 574 F.2d at 325–26. We therefore hold that the District Court did not abuse its discretion when it refused to strike the officers' testi-

mony but rather provided an opportunity for cross-examination of the witnesses.

■ Mistakes by the District Court in the application of the Jencks Act are subject to harmless error analysis. *Rosenberg v. United States*, 360 U.S. 367, 370–71, 79 S.Ct. 1231, 1233–34, 3 L.Ed.2d 1304 (1959). Whether an error is harmless depends on whether the error is one that might·reasonably be thought to have had "substantial and injurious effect or influence" on the jury verdict. *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1557 (1946). Accordingly, although we believe that the District Court did not err in this application of Jencks, any error committed by the District Court when it refused to strike Bonner's and Blackwell's testimony was harmless. The court ordered the government to provide the statements to the defendants and gave the defendants the opportunity to recall and cross examine both witnesses. Such a remedy cures any possible prejudice the defendant might otherwise suffer from a tardy Jencks disclosure. *United States v. Patrick*, 965 F.2d 1390, 1400 (6th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992); *Pope*, 574 F.2d at 326–27; *United States v. Dye*, 508 F.2d 1226 (6th Cir.1974), *cert. denied*, 420 U.S. 974, 95 S.Ct. 1395, 43 L.Ed.2d 653 (1975). Consequently, even if the District Court should have stricken the officers' testimony, the defendants suffered no prejudice or harm from the error.

■ The second Jencks violation occurred when the defendants requested Jencks material regarding ATF agent Robin King at the close of her direct testimony. The defendants do not argue on appeal that the District Court erred when it struck her testimony, a sanction explicitly provided by the Jencks Act, but rather that this violation by the prosecutor is one of three which cumulatively warrant reversal.

The third prosecution error occurred when the prosecutor failed to notify the defense

---

**2.** ·Other circuits are clearly in accord on this point. See, e.g., *United States v. Hill*, 976 F.2d 132 (3d Cir.1992); *United States v. Singer*, 970 F.2d 1414 (5th Cir.1992); *United States v. Arboleda*, 929 F.2d 858 (1st Cir.1991); *United States v. Maldonado–Rivera*, 922 F.2d 934 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2858, 115

L.Ed.2d 1025 (1991); *United States v. Wables*, 731 F.2d 440 (7th Cir.1984); *United States v. Heath*, 580 F.2d 1011 (10th Cir.1978), *cert. denied*, . *nied*, 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979); *United States v. Polizzi*, 500 F.2d 856 (9th Cir.1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975).

about the toxicology testing or turn over the results. Rule 16 of the Federal Rules of Criminal Procedure requires the government, upon request from a defendant, to disclose results or reports of any scientific tests made in connection with the case which are in the possession of the government. Fed.R.Crim.P. 16(b)(1)(B). The rule sets forth a variety of remedies from which the court may choose if the rule is violated. As the harshest sanction for nondisclosure of such evidence, the court may prohibit a party from introducing the evidence at trial as the court did here. Fed.R.Crim.P. 16(d)(2). Again, the defendants do not argue that the District Court erred in excluding the evidence, but rather that this violation adds to the "cumulative effect" requiring reversal.

In sum, we believe that the District Court properly exercised its discretion regarding each discovery violation by the prosecutor. The defendants concede that the violations by the government individually do not warrant dismissal. However, they argue that the District Court erred in refusing to dismiss the indictment based on the "cumulative effect" of the violations. What ultimately dooms the defendants' "cumulative effect" argument is their complete failure to identify or describe any prejudice that they suffered as a result of the prosecutor's mistakes. They allege no unremedied prejudice, and cite no case which supports a reversal for such "cumulative effect." They chose not to recall or cross-examine Bonner or Blackwell on the seizure hearing transcripts, and all other statements and evidence they raise here were suppressed or stricken from the record. Given their failure to identify such prejudice, and given our own review of the record, we are convinced that the District Court properly exercised its discretion in fashioning appropriate remedial sanctions for the Jencks Act and Rule 16 violations rather than dismissing the indictment.

### III.

■ Both defendants assert sufficiency of the evidence challenges on appeal. Taylor argues that there is insufficient evidence to sustain his conviction for possession with intent to distribute cocaine. Nash argues that there is insufficient evidence to sustain his

convictions for the two firearms convictions. We review sufficiency of the evidence claims in the light most favorable to the government. If any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt, the convictions should be affirmed. *United States v. Poulos,* 895 F.2d 1113, 1117 (6th Cir.1990).

### A.

■ Taylor initially contends that he was never identified in court as one of the persons present in the parking lot during the drug transaction. This argument lacks merit, since Officer Curtis identified Taylor as the front-seat passenger in the Mercedes, and testified that she effected the arrest of Taylor that evening in the grocery store parking lot. The police photographed the defendants when they were arrested at the scene. Those photographs included pictures of Taylor, and Detective Bonner's description of the passenger of the Mercedes matched the photographs of Taylor. Viewed in the light most favorable to the government, this evidence establishes that Taylor was in fact one of the persons present in the grocery store parking lot during the drug transaction.

Taylor next contends that it is inconceivable that the jury could acquit defendant Oliver of the drug charge but convict Taylor. He argues that no rational juror would believe that Taylor was involved with the drug deal, while Oliver was an innocent grocery shopper who just happened to give Mr. Taylor a ride to the parking lot. We disagree. The jury might well have inferred from the evidence presented that Oliver entered the grocery store rather than remain in the parking lot for any number of reasons, including a choice not to participate in the impending drug deal. However, regardless of the evidence against Oliver, the jury heard testimony from the officers and from informant Gillum that Taylor spoke with Nash at the parking lot, and that Taylor handed Nash a package which Nash then showed to Gillum. Gillum later identified that package as containing cocaine. There is also testimony that Nash was seen speaking with the occupants of the Mercedes (Taylor and Oliver) in the hotel parking lot just prior to the transaction, lending support to an inference that

Taylor knew of the planned transaction, and chose to participate in it by travelling to the parking lot and associating with Nash. Viewing all of this evidence in the light most favorable to the government, we believe there is sufficient evidence to support the jury's finding of each element of § 841(a)(1) beyond a reasonable doubt. Accordingly, we affirm Mr. Taylor's conviction on Count 1.

## B.

■ Nash argues that there is not sufficient evidence for a jury to find, beyond a reasonable doubt, that he willfully participated in the commission of the weapons offenses. He contends that there was no proof at trial that he knew of the weapons or that he had anything to do with the weapons being involved in the drug transaction. Nash argues that the only proof linking him to the guns came from co-defendant Roosevelt, who was in the Buick in which the weapons were found. Roosevelt, who pled guilty and testified on behalf of the government, stated that while in the parking lot of the hotel with Nash prior to the drug transaction, Nash instructed him and Pennington to "go get the things." Roosevelt stated that he understood Nash to be referring to the guns. Roosevelt and Pennington then went to Pennington's home, retrieved the two shotguns, and were in the parking lot during the drug transaction. Roosevelt further testified that it was his and Pennington's role in the transaction was to protect Nash during the deal. Nash argues that "go get the things" could mean anything, and that what Roosevelt thought cannot be attributed to Nash. If this were the only evidence linking Nash to the guns it would be a much closer case. However, there is also evidence that after his arrest, Nash told officers that Pennington and Roosevelt were in the parking lot for his protection, "to handle things if the deal went bad." This evidence confirms Roosevelt's testimony and his interpretation of Nash's instructions to Roosevelt and Pennington. Viewed in the light most favorable to the government, sufficient evidence exists to support Nash's § 924(c) convictions.

## IV.

The District Court convicted Nash of one underlying drug offense and two counts of using or carrying a weapon in relation to that drug offense. The court then sentenced defendant Nash to imprisonment for 27¼ years: 2¼ years (27 months) on the underlying drug charge, and consecutive five and twenty year sentences for the 18 U.S.C. § 924(c)(1) weapons violations. The issue before us, raised by the Court for the first time during oral argument, is whether or not § 924(c) allows multiple convictions and sentences in relation to a single predicate drug-trafficking offense.

Section 924(c)(1) provides, in pertinent part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years. . . . In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years. . . . [N]or shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried. . . .

18 U.S.C. § 924(c)(1).

## A.

■ It is well-settled in this circuit that a defendant has committed only a single violation of § 924(c)(1) when he uses multiple firearms in relation to a single drug trafficking offense. *United States v. Sims*, 975 F.2d 1225, 1233 (6th Cir.1992) ("Since the defendants-appellants were charged with and convicted of only one predicate offense, a judgment of conviction may be entered against each of them for only one violation of section 924(c), and each may receive only one sentence for violating section 924(c)."), *cert. denied*, — U.S. ——, 113 S.Ct. 1315, 122 L.Ed.2d 702 (1993); *see also United States v. Clark*, 928 F.2d 733, 738 (6th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 144, 116 L.Ed.2d 110 (1991); *United States v. Nabors*, 901 F.2d 1351, 1357–58 (6th Cir.), *cert. denied*, 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990); *United States v. Henry*,

878 F.2d 937, 942–45 (6th Cir.1989). All other circuits addressing the issue, save the Eighth, are in agreement on this point. *See United States v. Lindsay*, 985 F.2d 666 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 103, 126 L.Ed.2d 70 (1993); *United States v. Parra*, 2 F.3d 1058 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 639, 126 L.Ed.2d 597 (1993); *United States v. Moore*, 958 F.2d 310 (10th Cir.1992); *United States v. Hamilton*, 953 F.2d 1344, 1346 (11th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 240, 121 L.Ed.2d 174 (1992); *United States v. Privette*, 947 F.2d 1259 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1279, 117 L.Ed.2d 505 (1992); *United States v. Henning*, 906 F.2d 1392 (10th Cir.1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 789, 112 L.Ed.2d 852 (1991); *United States v. Fontanilla*, 849 F.2d 1257 (9th Cir.1988).

■ The only court allowing multiple convictions and sentences under § 924(c) is the Eighth Circuit. In *United States v. Freisinger*, 937 F.2d 383 (8th Cir.1991), the court found the Double Jeopardy Clause not implicated by this problem. Congress had clearly expressed its intent to allow multiple convictions based on the same predicate offense by prefacing the object of the offense, which the court believed to be the weapon(s), with the word "a." [3] "A" authorized singular units of prosecution, meaning that for each firearm involved, a new charge could be lodged against the defendant. *Id.* at 390. The court held, however, that the convictions were not "second and subsequent" convictions within the meaning of § 924(c), and thus ordered that the defendant was to be sentenced to terms corresponding to a first § 924(c) offense, and those terms were to run concurrently. *Id.* at 392, *cited and explained in United States v. Ortiz–Martinez*, 1 F.3d 662, 671–72 (8th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 355, 126 L.Ed.2d 319 (1993).

The Eighth Circuit recently explained *Freisinger* in *United States v. Canterbury*, in which the court retreated somewhat from *Freisinger's* broad reasoning:

> What distinguishes one offense from another [under § 924(c) ] and gives them separate legal identities is the "use" attributed to the firearm: each separate use of a firearm constitutes a separate offense, even where there is only one predicate drug-trafficking crime.

2 F.3d 305, 306 (8th Cir.1993) (citing *United States v. Lucas*, 932 F.2d 1210, 1223 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 199, 116 L.Ed.2d 159 (1991)). The court held in *Canterbury* that the district court's dismissal of one of two § 924(c)(1) charges prior to trial was premature because the government had not been given the opportunity to prove separate, prohibited uses of the firearms as alleged in an indictment containing two substantive drug offenses. *Id.* at 306.

The Eighth Circuit also permits multiple, consecutive sentences to be imposed for these violations. In *United States v. Lucas*, 932 F.2d 1210 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 199, 116 L.Ed.2d 159 (1991) and —— U.S. ——, 112 S.Ct. 1186, 117 L.Ed.2d 429 (1992), the court held that multiple, consecutive sentences are permissible where the defendant has been convicted of two § 924(c) charges based upon the same predicate offense but entailing different physical stashes of weapons or different uses of the weapons. *Id.* at 1223.

We find the Eighth Circuit's reasoning on the issue of multiple convictions unpersuasive for reasons similar to those explained by the Second Circuit in its *Lindsay* decision. *See* 985 F.2d at 674–75. *Freisinger* is premised on the assumption that the word "firearm" is the object or principal subject of § 924(c) to which the statute's unit of prosecution is linked. Yet § 924(c) clearly focuses on firearms only to the extent that a defendant uses or carries them "during and in relation to" crimes of violence or drug trafficking crimes. *Lindsay* stated: "The statute emphasizes the relationship between the firearms and the underlying drug-trafficking crime, rather than the individual firearms themselves...." *Id.* at 673. Congress has enacted a host of other statutes addressing firearms in other contexts. The purpose of § 924(c)(1), as explained extensively in *Lindsay*, is to target those defendants who choose to involve weapons in an underlying narcotics crime or crime of violence. Consequently, the predicate offense, not the firearm, is the object of

---

**3.** "Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm...." 18 U.S.C. § 924(c)(1) (emphasis added).

§ 924(c)(1). When the predicate offense is considered § 924(c)'s unit of prosecution, *Freisinger's* assertion that the language unequivocally allows multiple convictions fails.[4]

We conclude that § 924(c)'s unit of prosecution is the underlying offense, not the number of firearms. Where the indictment charges a single predicate offense, a court may not enter a judgment of conviction against a defendant, and may not sentence a defendant, for multiple § 924(c) counts in relation to that single predicate offense. Consequently, we hold that the District Court erred as a matter of law when it convicted and sentenced Nash to two violations of § 924(c)(1).[5]

### B.

█ Given this error, we now turn to a determination of a proper remedy. In *United States v. Parra*, 2 F.3d 1058 (10th Cir.), *cert. denied*, ─── U.S. ───, 114 S.Ct. 639, 126 L.Ed.2d 597 (1993), the court determined that the proper remedy, when penalties are the same for either firearm count, is to remand to the district court with an order to vacate the conviction and sentence on the second of the two firearms counts and to allow all other convictions and sentences to stand. *See also United States v. Torres*, 862 F.2d 1025 (3d Cir.1988) (proper remedy is to impose a "general sentence" for the two convictions, the term of which may not exceed the maximum permissible sentence on the count that carries the greatest maximum sentence). We believe that the remedy outlined in *Parra* is appropriate in this case. It makes no difference under § 924(c) whether Nash is convicted and sentenced for Count 2 or Count 3, since both carry five-year mandatory minimum penalties and both are supported by sufficient evidence. We therefore remand to the District Court with an order

to vacate Nash's conviction and sentence on Count 3. Nash should remain sentenced to 27 months on Count 1, and to 5 years on the single § 924(c)(1) conviction (Count 2) to run consecutively with Count 1.

Accordingly, we AFFIRM the conviction of defendant Taylor in all respects. We REMAND to the district court with an order to VACATE defendant Nash's conviction and sentence on Count 3. We AFFIRM the convictions of defendant Nash in all other respects.

---

4. We are further disuaded from relying on Freisinger given its allowance of concurrent § 924(c) sentences, since § 924(c) specifically dictates that "nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment...." 18 U.S.C. § 924(c)(1).

5. We do not believe that the Supreme Court's recent opinion in *Deal v. United States*, ─── U.S. ───, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993) is implicated here. In *Deal*, the Supreme Court held that a defendant may be sentenced to five-

and twenty-year consecutive terms for "a second and subsequent conviction" where both the first and any subsequent convictions arise in the same proceeding. The defendant in that case had been charged with multiple bank robberies, and each § 924(c) charge was specifically linked to a different predicate bank robbery. *Id.* ─── U.S. at ───, 113 S.Ct. at 1995. Unlike *Deal*, Nash was charged with a single predicate drug offense, and both § 924(c) charges were specifically linked to that same predicate offense.