21 F.3d 429
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Eddie SMITH, Defendant-Appellant.
 No. 93-5817.
 United States Court of Appeals, Sixth Circuit.
 April 15, 1994.
 
 Before: MERRITT, Chief Judge; MILBURN and SILER, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 This is an appeal from defendant's conviction for aiding and abetting the possession of cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. A five count indictment was filed in the Western District of Tennessee on September 11, 1990, against six defendants, including Smith. Smith was indicted on the first three counts. Count 1 charged all six defendants with possession with intent to distribute cocaine. Counts 2 and 3 charged five of the defendants with firearms offenses. At the close of the government's proof at trial, the district court dismissed Counts 2 and 3 against the defendant pursuant to a motion for judgment of acquittal. After a guilty verdict from the jury on Count 1, the district court sentenced him to 24 months imprisonment.
 
 
 2
 Two issues are raised on appeal: the sufficiency of the evidence that the government did not entrap the defendant and the properiety of the sanctions, short of a mistrial, that the court imposed on the government for its violations of the Jencks Act. We affirm the district court's judgment in all respects. The government presented sufficient evidence that the defendant was predisposed to commit the crime and consequently was not entrapped as a matter of law. Further, the district court properly exercised its discretion when it entered sanctions against the government for multiple Jencks Act violations.
 
 I.
 
 3
 On August 29, 1990, Floyd Bonner, a detective with the Shelby County Sheriff's Office in Memphis, received information from a paid confidential informant, Ricky Gillum, that Gillum had arranged a purchase of approximately 250 grams of cocaine from an individual named "Red," later identified as defendant Eddie Smith. Bonner requested that Gillum come to his office, and once there, Gillum had at least one tape-recorded conversation with the defendant arranging the deal which was played for the jury. That evening, Bonner posed as the purchaser of the drugs, and the defendant and five others were arrested during the attempted deal.[1]
 
 
 4
 Two of the six defendants pled guilty, and the remaining four were tried together before a jury. Throughout the proceedings, Smith claimed that he had been entrapped by Gillum into participating in the drug deal. Bonner testified regarding his use of Gillum as a paid confidential informant. He stated that he had used Gillum on approximately fifty cases during the past three years and that Gillum had been a reliable informant. He described Gillum's rate of pay as dependent on the amount of drugs and property seized. Regarding the relationship between Gillum and the defendant, Bonner testified that he did not know who initiated the contact between the two.
 
 
 5
 Gillum also testified regarding his work as an informant. He stated that he had been convicted of marijuana and crack cocaine felonies, worked on about 25 cases per year, and could not remember how much he had been paid. He testified that his initial conversations with the defendant were not taped but that they had been discussing the impending deal for several days before he notified Bonner. He admitted that he initiated contact with the defendant but stated that he did not press the defendant to participate and that the defendant had been eager to do so. He also claimed that he had known the defendant for approximately two years.
 
 
 6
 The defendant testified that he had known Gillum since 1975 when his sister and Gillum were dating. He admitted purchasing marijuana from Gillum in the past and that he had used cocaine and marijuana. However, he denied selling cocaine and testified that he told Gillum that he did not want to be involved in the cocaine sales. He described Gillum as incessantly calling and requesting that he participate so that Gillum could make the money to support his daughter and repay a loan that Gillum owed to the defendant.
 
 
 7
 At the close of the government's proof, the defendant made a motion for judgment of acquittal on all three counts. The district court dismissed the two firearms counts but denied the motion as to the cocaine count. The court again denied the motion at the end of all of the proof in the case. Upon a request by the defendant, the district court instructed the jury on entrapment. The jury returned a guilty verdict on the cocaine count, and the district court subsequently sentenced the defendant to 24 months imprisonment.
 
 II.
 
 8
 The defendant argues that the government presented insufficient proof that he was not entrapped, and that the district court should have entered a judgment of acquittal on the cocaine charge. The government responds that the defendant never formally renewed his motion for judgment of acquittal at the close of all of the proof in the case and therefore waived any objection to the sufficiency of the evidence underlying his conviction. The government also contends that this Court does not have jurisdiction over this issue because Smith never raised entrapment as a matter of law in the district court. Substantively, the government maintains that the proof at trial establishes that the defendant was predisposed to commit this crime and therefore was not entrapped as a matter of law.
 
 A.
 
 9
 The government's argument that the defendant waived any sufficiency of the evidence argument by failing to renew his motion for judgment of acquittal at the close of the entire case is belied by the record. The court asked whether all of the defendants wanted to renew their motions, and one of the four defense attorneys answered yes. It is clear from the record that the attorney's answer was taken by the court as a collective response from all four defense attorneys.
 
 
 10
 The government also argues that the defendant waived this issue because he did not present the specific argument--that he was entrapped as a matter of law--to the district court. This is also meritless. The defendant's entire strategy or defense was to show entrapment. The witnesses were examined under that premise, the defendant requested a jury instruction on entrapment, and the defendant moved for judgment of acquittal at the proper times during trial. It is clear from the record that the issue has been preserved and is properly before us on appeal.
 
 B.
 
 11
 The defendant's primary contention on appeal is that the evidence offered at trial was insufficient to support his conviction. Specifically, he argues that the government failed to prove beyond a reasonable doubt that he was predisposed to commit the crime and that the government did not induce him to do so. We review sufficiency challenges to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the government and resolving all reasonable inferences therefrom in its favor. Jackson v. Virginia, 443 U.S. 307, 324 (1979); United States v. Clark, 957 F.2d 248, 250 (6th Cir.1992); United States v. McLernon, 746 F.2d 1098, 1111 (6th Cir.1984).
 
 
 12
 When the defense of entrapment is at issue, the government must prove beyond a reasonable doubt that the defendant was predisposed to commit the criminal act and was induced to do so by Government agents. Jacobson v. United States, 112 S.Ct. 1535, 1540 (1992); Mathews v. United States, 485 U.S. 58, 63 (1988). Entrapment is generally a question of fact and accordingly left to the sound discretion and judgment of the jury. However, when the defendant claims entrapment as a matter of law, the court may so find if:
 
 
 13
 ... the testimony and facts [are] undisputed; a court may not choose between conflicting testimony or make credibility determinations. Furthermore, the undisputed evidence must demonstrate a "patently clear" absence of predisposition. If either of these elements is missing, then the predisposition question is for the jury to decide.
 
 
 14
 United States v. Barger, 931 F.2d 359, 366 (6th Cir.1991) (quoting United States v. Pennell, 737 F.2d 521, 534 (6th Cir.1984), cert. denied, 469 U.S. 1158 (1985)) (other citations omitted)). In United States v. McLernon, we also stated:
 
 
 15
 Entrapment is established as a matter of law if the undisputed evidence demonstrates that government agents engaged in conduct which "overbears an otherwise innocent person's will and thereby induces him to commit a criminal act that he was not disposed to commit."
 
 
 16
 746 F.2d at 1111 (quoting United States v. Hodge, 539 F.2d 898, 906 (6th Cir.1976), cert. denied sub nom., Robertson v. United States, 429 U.S. 1091 (1977)). In sum, entrapment may be established as a matter of law where the record reflects undisputed evidence that the government induced the defendant to commit the crime; and undisputed evidence that the defendant was not predisposed to do so prior to being contacted by the government agent. As the Supreme Court explained, the government must be careful not to "overstep[ ] the line between setting a trap for the 'unwary innocent' and the 'unwary criminal.' " Jacobson, 112 S.Ct. at 1537 (citing Sherman v. United States, 356 U.S. 369, 372 (1958).
 
 
 17
 A number of factors are relevant to analyzing a defendant's prior predisposition, including his character and reputation including any prior criminal record, whether the suggestion of criminal activity was made by the government or the defendant, whether the defendant engaged in the activity for profit, whether he was initially reluctant to commit the offense, and the nature of the induce or persuasion supplied by the government. Barger, 931 F.2d at 366. Under such an analysis, the record in this case does not reflect the kind of patently clear, undisputed evidence necessary to find that the defendant was not predisposed to commit the crime.
 
 
 18
 The government did not introduce any evidence of the defendant's bad character or that he had sold drugs in the past, and Gillum admitted to initiating the contact with the defendant. However, the government did introduce proof that the defendant had engaged in the drug deal for a profit. Gillum testified that approximately $1,500 was involved in the deal and that the defendant was involved because he wanted to make money and wanted Gillum to repay a debt Gillum owed to the defendant. The government also introduced testimony by Gillum and a tape of a conversation between Gillum and the defendant during which the defendant was not reluctant to commit the offense. Finally, the nature of the government's inducement here was merely to provide the defendant the opportunity to commit the drug deal for profit. As the Supreme Court stated in Jacobson, "[T]he fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution." 112 S.Ct. at 1540 (quoting Sorrells v. United States, 287 U.S. 435, 441 (1932)).
 
 
 19
 We note that the defendant's characterizations of Gillum's actions and of his own intentions directly conflict with the government's evidence. While our own reading of the record leaves some doubt about the veracity and credibility of Gillum as a witness, we are bound to view the evidence and draw all inferences in the light most favorable to the government. Under that standard, we do not find the evidence of lack of predisposition patently clear or undisputed. We therefore affirm the district court's refusal to find entrapment as a matter of law.
 
 III.
 
 20
 The defendant's second assignment of error relates to the government's violations of the Jencks Act[2] and Rule 16(d) of the Federal Rules of Criminal Procedure. The defendant argues that the district court erred when it imposed various remedial sanctions short of striking testimony or declaring a mistrial for the violations, and that the cumulative effect of the violations required a mistrial.
 
 
 21
 The violations of which the defendant complains include failure to turn over previous transcripts of testimony given by government witnesses and failure to notify the defense or turn over results of toxicology testing on a drug sample. As sanctions for these violations, the district court provided the defense an opportunity for cross-examination of the witnesses after being provided the transcripts, and excluded evidence of the drugs for which the testing was not revealed. The government contends that the district court properly exercised its discretion in crafting these sanctions and should be affirmed.
 
 
 22
 This court addressed the identical arguments in a separate appeal by two of Smith's co-defendants, Ronald Taylor and Michael Nash. See United States v. Taylor, 13 F.3d 989-91 (6th Cir.1994). In that opinion, we ruled that the district court properly exercised its discretion in meting out appropriate sanctions for the errors made by the government. We adopt section II of the Taylor opinion and affirm the decision of district court on the grounds explained in that opinion.
 
 
 23
 Accordingly, we AFFIRM the defendant's conviction in all respects.
 
 
 
 [1]
 A more complete recitation of the facts of the case may be found in United States v. Taylor, 13 F.3d 986 (6th Cir.1994), the appeal of two of the defendant's co-defendants. We provide in this opinion only those facts relevant to the issues raised on appeal
 
 
 [2]
 18 U.S.C. Sec. 3500(b)